STATE OF NORTH CAROLINA v. DAVE ANTHONY HUDSON

No. COA09-1421

(Filed 17 August 2010)

**1. Search and Seizure— crossing center line—probable cause for stop**

The trial court's unchallenged finding that defendant twice crossed the center and fog lines in his truck was sufficient to support the conclusion that an officer had reasonable suspicion for a traffic stop.

**2. Appeal and Error— preservation of issues—not raised at trial**

Defendant did not preserve for appellate review the question of whether a traffic stop was unreasonably extended where his motion to suppress was based only on a contention about the stop that was resolved by an unchallenged finding. His attempts to challenge for the first time on appeal the duration of the stop, the circumstances surrounding the consent, or the scope of the search were not considered.

**3. Drugs— constructive possession—trunk of car on car carrier**

The evidence of constructive possession was sufficient to convict defendant of possession of marijuana with intent to sell and deliver where defendant was driving a car carrier that included among the cars being transported a Mercedes with marijuana in the trunk. While defendant's possession of the car was not exclusive in the sense that he did not own it, the State presented other evidence from which an inference of defendant's knowledge could be drawn.

**4. Drugs— maintaining vehicle for keeping marijuana—driver of car carrier—drugs in trunk of car**

There was sufficient evidence to convict defendant of maintaining a vehicle for the keeping of a controlled substance where

a car with marijuana in the trunk was found on a car carrier driven by defendant. The issue of constructive possession was resolved elsewhere, and defendant's possession of the car over several days, including stops and resumptions during the trip from Miami to New York, was substantial evidence that defendant was maintaining the vehicle to keep or sell marijuana from the time he loaded it onto his car carrier until he was stopped by law enforcement.

**5. Criminal Law— refusal of jury's request to view evidence— no plain error**

The trial court did not commit plain error in a marijuana prosecution by not submitting defendant's written statement to the jury upon their request. Given the facts and incriminating circumstances of the case, there was not a reasonable possibility of a different result had the error not been committed.

Appeal by Defendant from judgment entered 19 May 2009 by Judge William C. Griffin Jr. in Wilson County Superior Court. Heard in the Court of Appeals 12 April 2010.

*Attorney General Roy Cooper, by Special Deputy Attorney General Robert T. Hargett, for the State.*

*McCotter, Ashton & Smith, P.A., by Rudolph A. Ashton, III and Charles K. McCotter, Jr., for Defendant.*

BEASLEY, Judge.

Dave Anthony Hudson (Defendant) appeals from judgment entered on his convictions of possession with the intent to sell and deliver marijuana and maintaining a vehicle for the keeping of a controlled substance. We conclude that there is no error.

On 18 May 2009, Defendant filed a motion to suppress all evidence gathered as a result of the traffic stop from which the possession and maintaining a vehicle charges arose. The motion was denied that same date, and the trial began immediately thereafter.

On 23 October 2008, Corporals Joshua Bissette and Jimmy Renfrow of the Wilson County Sheriff's Office were patrolling I-95. Around 8:40 p.m., Bissette saw Defendant driving a freight liner transfer truck with a car carrier that had a high Department of Transportation identification number, indicating possible drug activity and prompting him to advise Renfrow of Defendant's approach.

Renfrow followed Defendant for about two miles and observed his tractor trailer cross the center dividing line of the northbound lanes and weave back over the fog line two times. Renfrow stopped the truck, and Defendant exited with his hands in the air and his back to the officer. Defendant produced his driver's license, registration, and log book as requested. Bissette then arrived and performed a license and registration check while Defendant sat with Renfrow in his patrol car. Finding the information valid, Bissette approached Renfrow's car to return Defendant's license, registration, and log book, whereupon he asked to see the bills of lading for the vehicles on his truck. Bissette noted that Defendant was sweating, although it was forty degrees outside, and acting nervously. The bills of lading matched the cars being transported, but the one for a white 2007 Mercedes Benz convertible raised Bissette's suspicions. It referenced "Eddie" as the contact person for both pick-up and drop-off of the car and listed the same phone number for both. The pick-up location was listed as "Opa Locka Blvd and 143" in Miami, Florida, and the drop-off address was listed as "Gun Hill Road" in Bronx, New York. Bissette testified that this bill of lading stood out because the others contained full names of the companies or individuals sending and receiving the vehicle and specific addresses from and to which the car was being delivered. At that point, the officers returned Defendant's documentation, and Renfrow advised Defendant that he was free to go. As Defendant stepped out of the patrol car, Bissette asked for consent to search the tractor trailer, and at 9:19 p.m., Defendant signed a form indicating he was giving his consent, "knowingly and voluntarily," to the search of his "truck and manifest (cars on car·carrier)."

The officers found no illegal substances in the cab and then began to search the cars on the carrier. The carrier's proximity to the interstate railing, however, prohibited them from opening the vehicles' doors, and Bissette asked Defendant to drive to a closed gas station at the next exit so they could offload the cars, search them, and load them back onto the carrier. Defendant agreed, but when the officers attempted to search the Mercedes, they learned that Defendant had provided them only a limited access valet key, which would not open the trunk. The officers, however, were able to access the trunk by opening the convertible roof, whereupon they smelled marijuana and saw a large bag, which contained what was later identified by the State Bureau of Investigation as 7.5 pounds of marijuana. Defendant was arrested and, after Bissette read him his *Miranda* rights, agreed to make a statement and signed a waiver of rights. Defendant's excul-

patory statement was read to the jury. Defendant offered no evidence but made motions to dismiss at the end of the State's case and the close of all the evidence, which were denied. The jury found Defendant guilty as charged, and Defendant duly noted his appeal.

## I. Motion to Suppress

Defendant challenges the trial court's denial of his motion to suppress all evidence resulting from the illegal stop and detention. The standard of review for a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law. *State v. Hernandez*, 170 N.C. App. 299, 303, 612 S.E.2d 420, 423 (2005). "[T]he trial court's findings of fact 'are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting.' " *State v. Barden*, 356 N.C. 316, 332, 572 S.E.2d 108, 120-21 (2002) (citation omitted). However, its "conclusions of law regarding whether the officer had reasonable suspicion . . . to detain a defendant [are] reviewable *de novo*." *State v. Hudgins*, 195 N.C. App. 430, 432, 672 S.E.2d 717, 718 (2009) (internal quotation marks and citations omitted).

### A. Reasonable Suspicion for the Stop

[1] Defendant first contends that his motion to suppress should have been allowed because law enforcement made the initial stop without any reasonable, articulable suspicion of criminal activity. Specifically, Defendant claims that the trial court's finding that Renfrow observed "Defendant's rig cross[] the northbound center line twice and the fog line twice" over a two-mile stretch was insufficient to support a reasonable suspicion as to Defendant's involvement in criminal activity. We disagree.

In relation to whether the stop of Defendant's vehicle was constitutional, the trial court found the following:

1, Wilson County Deputies Renfrow and Bissette were working an "I-95 traffic detail" in separate vehicles; 2, Bissette first observed the Defendant's tractor-trailer car hauler northbound on I-95; 3, Bissette's attention was called to the Defendant's vehicle because the driver was "driving the mirror," among other things; 4, Bissette communicated to Renfrow by Nextel Direct Connect about what he had observed and he then left I-95; 5, thereafter, Renfrow entered I-95 and picked up the Defendant's vehicle which he followed two miles; 6, during this time the Defendant's rig crossed the northbound center line twice and the fog line twice[.]

Defendant does not assign error to any of the foregoing; thus, these unchallenged findings of fact " 'are deemed to be supported by competent evidence and are binding on appeal.' " *Hudgins*, 195 N.C. App. at 432, 672 S.E.2d at 718 (citation omitted). Accordingly, we review the trial court's order only to determine whether the findings of fact support the legal conclusion that Renfrow's stop of Defendant was constitutional under the circumstances.

We review the constitutionality of the stop pursuant to the Fourth Amendment's protection "against unreasonable searches and seizures." *State v. Barnard*, 362 N.C. 244, 246, 658 S.E.2d 643, 645 (2008). "A traffic stop is a seizure . . . [and] is permitted if the officer has a reasonable, articulable suspicion that criminal activity is afoot." *State v. Styles*, 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008) (internal quotation marks and citations omitted). This Court has held the observation of a vehicle twice crossing the highway's center line provided probable cause to justify an officer's stop for the "readily observable" traffic violations.[1] *See State v. Baublitz*, 172 N.C. App. 801, 806-07, 616 S.E.2d 615, 619-20 (2005) (holding the stop of defendant's vehicle for a traffic infraction was constitutional because the officer had "observed defendant's vehicle twice cross the center line of the highway, in violation of N.C. Gen. Stat. § 20-146(a)").

In the instant case, the trial court found that Defendant's truck crossed the center line of I-95 and pulled back over the fog line twice while Renfrow followed him. Accordingly, as in Baublitz, the officer witnessed Defendant's commission of a statutory violation under N.C. Gen. Stat. § 20-146(a). *See* N.C. Gen. Stat. § 20-146(a) (2007) (requiring vehicles to be driven "upon the right half of the highway"). Therefore, his observation of Defendant twice crossing the center and fog lines provided Renfrow with probable cause to stop Defendant's truck. Where only a reasonable suspicion was required, Renfrow was clearly justified in stopping Defendant by meeting the higher standard of probable cause. Thus, we hold that the trial court's unchallenged finding that Defendant crossed the center and fog lines twice is sufficient to support its conclusions that Renfrow had a reasonable suspicion to stop Defendant's vehicle and did not violate constitutional principles in so doing.

---

1. While "reasonable suspicion is the necessary standard for traffic stops, regardless of whether the traffic violation was readily observed or merely suspected," it remains "a less demanding standard than probable cause." *Styles*, 362 N.C. at 414, 415, 665 S.E.2d at 439, 440. Therefore, "probable cause is sufficient, but not necessary, for a traffic stop." *Id.* at 416 n.1, 665 S.E.2d at 440 n.1.

## B. Duration of the Detention

**[2]** Defendant next contends that the seizure was unreasonably extended and that any evidence obtained thereafter was tainted by the illegality of a detention that exceeded the permissible scope of an investigatory traffic stop. Defendant continues that his consent to the search was accordingly not voluntary because it was tainted by a prolonged detention and that he remained seized when he consented, such that the traffic stop had not given way to a consensual encounter. Defendant also argues that, notwithstanding the question of voluntariness, such consent would have been invalidated because the officers went beyond the spatial and temporal scope thereof when they asked him to drive the car carrier to the next exit ramp and unload the cars at a closed gas station, thereby exceeding the parameters of any consensual encounter.

However, Defendant's written motion stated only that "[t]he stop was made without any reasonable or articularable [sic] suspicion that criminal activity was afoot," as the sole grounds for suppression of "all evidence arising out of and flowing from the illegal stop of . . . [his] motor vehicle and the subsequent search" thereof. Defendant's affidavit in support of his motion to suppress likewise focused entirely on the circumstances leading up to the traffic stop and argued only that he "did not cross the center line at any time in violation of NC General Statutes," a dispute that was resolved by the trial court's unchallenged finding of fact number six. Furthermore, defense counsel elicited no testimony at the suppression hearing to support any ground for his motion other than the theory that the stop was unreasonable.

While the State presented evidence tending to describe the initial seizure, the nature of the temporary detention, and Defendant's signing of the consent to search form, Defendant raised no facts, by way of either cross-examination or presentation of evidence, to contest the duration of the stop, the voluntariness of the consent, or the scope of any consent granted. In fact, Defendant's cross-examination of Renfrow concerned only the time frame during which Bissette first followed the car carrier up to the point at which the trailer began to move back and forth across the white center line of I-95. Defense counsel's final statement to the trial court further indicated that the sole ground for the suppression motion related to the circumstances leading up to the stop: "Your Honor, I just don't feel that what happened, I mean the officer just testified that there were two

cars beside [Defendant]. He slides over, then slides back. What's he supposed to do? I mean, I don't think there was any reason to stop the vehicle."

Under the provisions of N.C. Gen. Stat. § 15A-977(a), a motion to suppress "must state the grounds upon which it is made," and "must be accompanied by an affidavit containing facts supporting the motion." N.C. Gen. Stat. § 15A-977(a) (2007). On a related note, the trial court is not required to make findings of fact when there is no conflicting evidence as to the issue in question. *See State v. Bowden*, 177 N.C. App. 718, 721, 630 S.E.2d 208, 211 (2006) (holding trial court's failure to make findings of fact associated with denial of defendant's suppression motion was not reversible error where defendant did not present any evidence of his own and no apparent conflict arose from the State's evidence). Moreover, the North Carolina Rules of Appellate Procedure require that a party's trial court motion state the "specific grounds" for the desired ruling "if the specific grounds were not apparent from the context." N.C. R. App. P. 10(b)(1); *see also State v. Smith*, 178 N.C. App. 134, 139, 631 S.E.2d 34, 38 (2006) (concluding defendant failed to preserve for review his claim that trial court erred in denying his motion to suppress confession under *Miranda*, where defendant raised different ground of due process at trial); *State v. Holliman*, 155 N.C. App. 120, 124, 573 S.E.2d 682, 686 (2002) (holding defendant waived assignment of error by arguing at trial that evidence should be suppressed on grounds of coercion but argued on appeal that the statement should have been suppressed for lack of probable cause). Here, the only theory advocated by Defendant that was apparent from the context was that the discovery of the marijuana was tainted by an unconstitutional traffic stop. Where Defendant impermissibly raises additional theories as grounds for suppression, different from those argued at trial, he did not properly preserve his remaining assignments of error for appellate review and waived these arguments. *See Holliman*, 155 N.C. App. at 123, 573 S.E.2d at 685 ("[W]here a theory argued on appeal was not raised before the trial court, the law does not permit parties to 'swap horses between courts in order to get a better mount' in the appellate courts."). Thus, we do not consider his attempt to challenge, for the first time, the admissibility of the evidence based on the duration of the stop, the circumstances surrounding the consent, or the scope of the search.

## II. Motion to Dismiss

Defendant contends that the trial court erred in denying his motion to dismiss both counts of the indictment on the ground of insufficient evidence to support his convictions. Upon review of a motion to dismiss challenging the sufficiency of the evidence, we question "whether there is substantial evidence of each essential element of the offense charged." *State v. Borkar*, 173 N.C. App. 162, 165, 617 S.E.2d 341, 343 (2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *State v. Patterson*, 335 N.C. 437, 449-50, 439 S.E.2d 578, 585 (1994) (citations omitted). We view the evidence in the light most favorable to the State, entitling it to all reasonable inferences that may be drawn therefrom, and resolve any contradictions in its favor. *State v. Sumpter*, 318 N.C. 102, 107, 347 S.E.2d 396, 399 (1986). However, "[i]f the evidence is sufficient only to raise a suspicion or conjecture . . . the motion should be allowed." *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002).

### A. Possession with the Intent to Sell and Deliver Marijuana

[3] Defendant contends that there was insufficient evidence to convict him of possession with the intent to sell and deliver marijuana. After thorough review of the record, we disagree.

To convict a defendant of possession with the intent to sell and deliver, the State must prove: (1) possession of a substance, (2) which is a controlled substance, and (3) intent to sell or distribute that controlled substance. *State v. Carr*, 145 N.C. App. 335, 341, 549 S.E.2d 897, 901 (2001); *see also* N.C. Gen. Stat. § 90-95(a)(1) (2007). Defendant argues that the State failed to produce sufficient evidence that he possessed, either actually or constructively, the marijuana found in the white Mercedes.

Here, the State proceeded upon a theory of constructive possession. *See State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 270 (2001) (" '[F]or possession of contraband materials, the prosecution is not required to prove actual physical possession of the materials.' Proof of nonexclusive, constructive possession is sufficient."). "A defendant constructively possesses contraband when he or she has 'the intent and capability to maintain control and dominion over' it[,]" whether "alone or jointly with others." *State v. Miller*, 363 N.C. 96, 99, 678 S.E.2d 592, 594 (2009) (citations omitted). However, "[u]nless a defendant has exclusive possession of the place where the contra-

band is found, the State must show other incriminating circumstances sufficient for the jury to find a defendant had constructive possession." *Id.* Examples of incriminating circumstances include a defendant's nervousness or suspicious activity in the presence of law enforcement. *See, e.g., State v. Butler,* 356 N.C. 141, 147, 567 S.E.2d 137, 141 (2002); *Carr,* 122 N.C. App. at 373, 470 S.E.2d at 73. Still, whether sufficient evidence of incriminating circumstances exists to prove constructive possession depends on the circumstances, and the specific facts of each case rather than any single factor will control; the question is ordinarily one for the jury. *See State v. Alston,* 193 N.C. App. 712, 716, 668 S.E.2d 383, 386-87 (2008), *aff'd per curiam,* 363 N.C. 367, 677 S.E.2d 455 (2009).

In car cases, not only is ownership sufficient, but

[a]n inference of constructive possession can also arise from evidence which tends to show that a defendant was the custodian of the vehicle where the controlled substance was found. In fact, the courts in this State have held consistently that the "driver of a borrowed car, like the owner of the car, has the power to control the contents of the car." Moreover, power to control the automobile where a controlled substance was found is sufficient, in and of itself, to give rise to the inference of knowledge and possession sufficient to go to the jury.

*State v. Dow,* 70 N.C. App. 82, 85, 318 S.E.2d 883, 886 (1984) (citations omitted). In *State v. Munoz,* 141 N.C. App. 675, 541 S.E.2d 218 (2001), this Court held that the evidence was sufficient to establish that the driver constructively possessed cocaine discovered in a car on his car carrier. The defendant had bills of lading for a van on the carrier and other vehicles he had transported but no such document for the car in which the drugs were found; the car had been under his control from the time it was loaded onto his carrier until he was stopped six days later; a fax listed a fictitious location as the drop-off address; and the trooper had to obtain the keys for the cars from the defendant in order to conduct the search. *Id.* at 685-86, 541 S.E.2d at 224.

Here, as in *Munoz,* "[a]n inference that [D]efendant had knowledge of the presence of the [marijuana] can be drawn from [D]efendant's power to control the [Mercedes]." *Id.* at 685, 541 S.E.2d at 224. The Mercedes had been under Defendant's exclusive control since it was loaded onto his car carrier in Miami two days prior to his arrest. Like the trooper in *Munoz,* Bissette also testified that Defendant had keys to every car on the carrier and, in fact, removed the cars from

the carrier himself so they could be searched. While Defendant's possession of the Mercedes was not exclusive in the sense that he did not own it but, rather, picked it up from an individual named "Eddie," the State here, as in *Munoz*, "presented other evidence from which an inference of [D]efendant's knowledge could be drawn." *Id.* Defendant displayed suspicious behavior when stopped by Corporal Renfrow by exiting the truck with his back to the officer and hands up, seemingly unusual activity for someone who was merely transporting cars and committed a minor traffic offense. Bissette testified that Defendant was "nervous acting," hands shaking when he handed over his information, and sweating Renfrow despite the forty-degree weather. Bissette "could see [Defendant's] carotid artery pulsating out of his neck" as Renfrow climbed into the cab of the truck. The suspect bill of lading referencing a contact person named only "Eddie" and lacking specific addresses for both pick-up and drop-off locations further contributed to the suspicious circumstances. Most suspiciously, Defendant had fully functional keys for each car on the carrier except the Mercedes. Bissette testified that Defendant gave the officers a "fob" key to the Mercedes, but the key regularly hidden inside this type of valet key was missing, which prevented its user from opening the trunk which housed 7.5 pounds of marijuana.

Defendant argues any inference of knowledge and constructive possession was negated by his lack of proximity to a car owned by another person, being shipped under a bill of lading, where he had a key to the vehicle but not the trunk containing the bag in which marijuana was found. We conclude, however, the specific facts taken in combination, which need not "rule out every hypothesis of innocence," and viewed in a light most favorable to the State are sufficient to prove other incriminating circumstances and constitute substantial evidence of constructive possession. *Scott*, 356 N.C. at 596, 573 S.E.2d at 869. Thus, we hold the State presented sufficient evidence on the element of possession to overcome Defendant's motion to dismiss. Our conclusion also summarily dismisses Defendant's additional argument that the trial court erred by instructing the jury on constructive possession.

## B. Maintaining a Vehicle

[4] Defendant also argues that there was insufficient evidence to convict him of maintaining a vehicle for the keeping of a controlled substance. We disagree.

It is unlawful for any person "[t]o knowingly keep or maintain any . . . vehicle . . . which is used for the keeping or selling of [controlled substances]." N.C. Gen. Stat. § 90-108(a)(7) (2007). "This statute prohibits the maintaining of a vehicle only when it is used for 'keeping or selling' controlled substances." *State v. Mitchell*, 336 N.C. 22, 32, 442 S.E.2d 24, 29 (1994). The term " 'keep' therefore denotes not just possession, but possession that occurs over a duration of time." *Id.* at 32, 442 S.E.2d at 29-30. The totality of the circumstances controls, and whether there is sufficient evidence of the "keeping or maintaining" element depends on several factors, none of which is dispositive. *State v. Bowens*, 140 N.C. App. 217, 221, 535 S.E.2d 870, 873 (2000).

Defendant first contends that the State failed to prove the knowledge element of the crime. However, our conclusion that the State presented substantial evidence to show Defendant was in constructive possession of the marijuana disposes of this argument. Defendant also disputes that the State offered sufficient evidence that he "kept or maintained" the vehicle. He claims "there is no evidence whatsoever that the possession of marijuana in the vehicle occurred over a duration of time or that [he] used the vehicle on any prior occasion to keep or sell controlled substances." The State's evidence, however, directly contradicts this argument.

The bill of lading for the Mercedes in which the marijuana was discovered shows that Defendant picked up the vehicle from Eddie on 21 October 2008. Defendant maintained possession as the authorized bailee of the vehicle continuously and without variation for two days before being pulled over on the evening of 23 October 2008. Having stopped to rest overnight on at least one occasion during that time period, he retained control and disposition over the vehicle and then resumed his planned route with the car carrier. These facts are clearly distinguishable from those in *Mitchell* and other cases where possession of a vehicle was truly temporary or occurred on only one occasion. Here, Defendant's possession of the Mercedes spanned several days, including stops and resumptions of the New York bound trip from Miami, and thus indisputably occurred over a duration of time. In light of the foregoing, the State presented substantial evidence that Defendant was transporting the Mercedes to keep or sell the marijuana contained therein and, therefore, maintained the vehicle for that purpose from the time he loaded it onto his car carrier until he was stopped by law enforcement two days later. Accordingly,

we conclude that the trial court did not err in denying Defendant's motion to dismiss.

## III. Defendant's Statement

[5] In his final argument on appeal, Defendant argues that the trial court committed plain error by failing to submit his written statement to the jury. We disagree.

During trial, Defendant's exculpatory statement was read to the jury in redacted form and entered into evidence as Exhibit 8. During deliberations, the jury requested to see any evidence that the trial court deemed it could see. The trial court erroneously informed the jury that Defendant's statement was never offered into evidence, and that it would therefore be inappropriate to let them have it but that they could see anything that was received as an exhibit. Defendant contends that the trial court violated N.C. Gen. Stat. § 15A-1233(b), which provides: "Upon request by the jury and with consent of all parties, the judge may in his discretion permit the jury to take to the jury room exhibits and writings which have been received in evidence." N.C. Gen. Stat. § 15A-1233(b) (2007). However, given the facts and incriminating circumstances of the instant case, we are unpersuaded that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a)(2007). Accordingly, this argument is without merit.

For the foregoing reasons, we conclude that the trial court did not err in denying the motion to dismiss and Defendant's trial was free from prejudicial error.

No error.

Chief Judge MARTIN and Judge JACKSON concur.