CALABRIA, Judge.
Antwarn Lee Rogers ("defendant") appeals from jury verdicts finding him guilty of possession with intent to manufacture, sell and deliver cocaine; intentionally keeping and/or maintaining a vehicle used for the keeping and/or selling of controlled substances; possession of drug paraphernalia; possession of one-half ounce or less of marijuana; and having attained the status of habitual felon. Because the evidence did not establish continuous possession of a vehicle for the purpose of keeping or selling a controlled substance, the trial court erred in denying defendant's motion to dismiss the charge of maintaining a vehicle for the keeping and/or selling of a controlled substance. However, with respect to defendant's other arguments, the trial court did not commit plain error.
I. Factual and Procedural Background
Between December of 2012 and August of 2013, Detective Evan Luther of the Vice and Narcotics Unit of the New Hanover Sheriff's Department ("Detective Luther") "bec[a]me familiar with the name of Antwarn Rogers[ ]" through his narcotics investigations. On 8 August 2013, Detective Luther was investigating defendant, and determined that he was driving a particular vehicle and staying in a particular hotel room. He assembled a search warrant and notified assisting detectives to monitor the hotel room. Detective Luther also advised the assisting detectives that defendant "was wanted on outstanding warrants [,]" so that they knew that they could initiate contact with defendant to serve outstanding processes, irrespective of whether the search warrant was granted. After the detectives detained defendant, Detective Luther executed the search warrant, which authorized him to search both the hotel room and the vehicle in connection with defendant.
In the hotel room, detectives located "a baggy that was in the toilet dispenser roll" containing narcotics. Detectives located "another baggy with white rock substance[ ]" and "a black digital scale[.]" Detective Luther swabbed the scale with a field test kit, which revealed the presence of cocaine.
In the vehicle, detectives located "two baggies with a white rock substance ... inside of the gas cap" of the vehicle. They also found money folded and placed inside of a Timberland boot in the car. A detective also located a rolled marijuana cigarette inside the ashtray in the front of the vehicle.
*94 Defendant was indicted for possession with intent to manufacture, sell, and deliver cocaine; manufacture of cocaine; felony possession of cocaine; maintaining a vehicle for the sale of a controlled substance; possession of drug paraphernalia; possession of one-half ounce or less of marijuana; and having attained the status of an habitual felon.
At the outset of trial, the State declined to proceed on the charge of manufacture of cocaine. At the close of the State's evidence, defendant moved to dismiss the charges. The trial court granted defendant's motion to dismiss with respect to the charge of felony possession of cocaine, and denied the motion with respect to the remaining charges. Defendant offered no evidence.
The jury returned verdicts finding defendant guilty of possession with intent to manufacture, sell, and deliver cocaine; maintaining a vehicle for the sale of a controlled substance; possession of drug paraphernalia; and possession of one-half ounce or less of marijuana. The jury further found that defendant had attained the status of an habitual felon.
Defendant failed to attend the trial, and the trial court entered an order finding that he could be tried in absentia , and that entry of judgment would be continued until defendant could be brought before the court.
On 13 August 2015, the trial court entered judgment upon the jury's verdicts, and sentenced defendant to consecutive active sentences of 35-54 months for maintaining a vehicle, possession of drug paraphernalia, and possession of marijuana, and 111-146 months for possession with intent to manufacture, sell, and deliver cocaine, in the North Carolina Department of Adult Correction.
Defendant appeals.
II. Motion to Dismiss
In his first argument, defendant contends that the trial court erred by denying his motion to dismiss the charge of maintaining a vehicle for the sale of a controlled substance. We agree.
A. Standard of Review
"This Court reviews the trial court's denial of a motion to dismiss de novo ." State v. Smith , 186 N.C.App. 57, 62, 650 S.E.2d 29, 33 (2007).
Upon review of a motion to dismiss, the court determines whether there is substantial evidence, viewed in the light most favorable to the State, of each essential element of the offense charged and of the defendant being the perpetrator of the offense.
State v. Lane , 163 N.C.App. 495, 499, 594 S.E.2d 107, 110 (2004) (citations omitted). "The [trial] court should grant a motion to dismiss if the State fails to present substantial evidence of every element of the crime charged." State v. McDowell , 329 N.C. 363, 389, 407 S.E.2d 200, 214 (1991). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith , 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).
B. Analysis
N.C. Gen. Stat. § 90-108(a)(7) (2015) makes it unlawful to "knowingly keep or maintain any ... vehicle ... which is used for the keeping or selling of [controlled substances]." "This statute prohibits the maintaining of a vehicle only when it is used for 'keeping or selling' controlled substances[.]" State v. Mitchell , 336 N.C. 22, 32, 442 S.E.2d 24, 29 (1994). "The focus of the inquiry is on the use , not the contents, of the vehicle." Mitchell , 336 N.C. at 34, 442 S.E.2d at 30 (emphasis in original).
Thus, the fact that an individual within a vehicle possesses marijuana on one occasion cannot establish the vehicle is used for keeping marijuana; nor can one marijuana cigarette found within the car establish that element. Likewise, the fact that a defendant was in his vehicle on one occasion when he sold a controlled substance does not by itself demonstrate the vehicle was kept or maintained to sell a controlled substance.
State v. Dickerson , 152 N.C.App. 714, 716, 568 S.E.2d 281, 282 (2002) (citation, quotation marks, brackets, and ellipses omitted). N.C. Gen. Stat. § 90-108(a)(7) does not require *95 the State to demonstrate a defendant's ownership of a vehicle, or that a sale was actually transacted from the vehicle. "The totality of the circumstances controls, and whether there is sufficient evidence of the 'keeping or maintaining' element depends on several factors, none of which is dispositive." State v. Hudson , 206 N.C.App. 482, 492, 696 S.E.2d 577, 584. In Mitchell , in interpreting N.C. Gen. Stat. § 90-108(a)(7), our Supreme Court observed that
"[t]he word 'keep' is variously defined as follows: '[t]o have or retain in one's power or possession; not to lose or part with; to preserve or retain.... To maintain continuously and methodically.... To maintain continuously and without stoppage or variation ... [; t]o take care of and to preserve....' "
Id. at 32, 442 S.E.2d at 29 (quoting Black's Law Dictionary 868 (6th ed. 1990)). Thus, " '[k]eep' ... denotes not just possession, but possession that occurs over a duration of time ." Id. at 32, 442 S.E.2d at 30 (emphasis added).
In Hudson , a law enforcement officer had stopped a car carrier truck driven by the defendant after being alerted of the vehicle's "possible drug activity" and observing the truck weaving over the center line and fog line twice. 206 N.C.App. at 483-84, 696 S.E.2d at 579. The officer asked to see the bills of lading for the cars being transported on the truck. Id. at 484, 696 S.E.2d at 579. One of the bills of lading for a particular car was different from those for the other cars and aroused the officer's suspicion due to the contact information, pick-up address, and drop-off address listed. Id. Ultimately, the defendant consented for officers to search the carrier truck as well as the vehicles it was carrying. In the course of their search, officers found 7.5 pounds of marijuana in the trunk of the car with the unusual bill of lading. Id. at 484, 696 S.E.2d at 579-80. The defendant was subsequently convicted of, inter alia , maintaining a vehicle for the keeping of a controlled substance in violation of N.C. Gen. Stat. § 90-108(a)(7).
On appeal, the defendant argued his motion to dismiss the charge of keeping or maintaining a vehicle used for the keeping or selling of a controlled substance should have been granted because there was no evidence that the possession of the marijuana in the trunk of the vehicle " 'occurred over a duration of time or that [he] used the vehicle on any prior occasion to keep or sell controlled substances.' " Id. at 492, 696 S.E.2d at 584. This Court disagreed, noting that the bill of lading showed that the defendant had picked up the car two days before he was arrested and that he had possessed the car since then while transporting it from Miami en route to New York. Id. We stressed that this evidence demonstrated "[the d]efendant had maintained possession as the authorized bailee of the vehicle continuously and without variation for two days before being pulled over [.]" Id. at 492, 696 S.E.2d at 584 (emphases added). The defendant "retained control and disposition over the vehicle" over the course of multiple days, which we deemed "indisputably ... a duration of time." Id. See also Lane , 163 N.C.App. at 500, 594 S.E.2d at 111 (providing that a conviction under N.C. Gen. Stat. § 90-108(a)(7) requires evidence of either "possession of [a controlled substance] in the vehicle that occurred over a duration of time, [or] ... evidence that [a] defendant ... used the vehicle on a prior occasion to sell [a controlled substance].")
In the present case, Detective Luther testified that he had been investigating defendant since approximately December 2012. He also testified that he had "information that [defendant] had been in possession [of the white Cadillac] for some period of time[.]" However, it appears from the transcript that Detective Luther obtained that information earlier on the day of defendant's arrest, from two individuals pulled in an unrelated traffic stop. The State seems to confirm this in their brief to this Court, noting that
[a]s a result of that traffic stop , Detective Luther was provided with information that assisted in an ongoing investigation of Defendant, including the description of a vehicle Defendant would be driving and an address where he would be located. Based on that information , Detective Luther set up surveillance during the afternoon of 8 August 2013 and notified other detectives *96 to look out for Defendant in a white Cadillac and at room 129 at the Econo Lodge on Market Street in Wilmington.
(Emphasis added.) We find no indication that law enforcement officers had information, prior to the day of defendant's arrest, linking defendant to the white Cadillac.
Detective Luther also testified that once he obtained certain identifying information about defendant on 8 August 2013, he "notified all the assisting detectives places to go, a vehicle specifically to be looking for , a room number at a hotel to be specifically focused on, and for any comings or goings from that hotel room." Specifically, "based upon the information that [Detective Luther had] received[,]" he "relay[ed] to other officers to be looking for [a] white Cadillac with the license number that [he] gave."
Officers began surveilling the Econo Lodge between 3:00 and 3:30 p.m. Lieutenant Leslie Wyatt ("Lt. Wyatt") testified that he drove by the Econo Lodge, observed a white Cadillac parked at the adjacent Ramada Inn, and then drove to a nearby gas station to get gas. When Lt. Wyatt returned minutes later, the Cadillac was gone. Lt. Wyatt parked in the Ramada Inn parking lot to begin surveillance of Room 129 at the Econo Lodge, and "roughly [ten] minutes after ... set[ting] up [the] surveillance, [he] saw the same white Cadillac that was parked at the Ramada pull in the parking lot of the Econo Lodge and park ... almost directly in front of Room 129." Lt. Wyatt observed only one person, whom he recognized as defendant, in the vehicle at that time. Lt. Wyatt saw defendant enter Room 129. He testified that defendant was in the hotel room "[a] total of probably [forty-five] minutes" before "[h]e came out of the room, shut the door behind him, and got into the white Cadillac." Lt. Wyatt and several other officers followed as defendant drove to an apartment complex, left the complex, and continued driving. Shortly thereafter, officers "were able to conduct a vehicle stop on the Cadillac and place [defendant] under arrest for outstanding warrants."
While other officers set up surveillance at the Econo Lodge, Detective Luther began preparing a search warrant. During preparation of the search warrant, at approximately 3:30 p.m., Detective Luther learned that "the white Cadillac was confirmed to be at the Ramada, [consistent with] the information that [he] had received [during the unrelated traffic stop]." (Emphasis added.) The search warrant was signed at 4:20 p.m. Detective Luther drove to the Econo Lodge with the warrant, arriving at approximately 4:30 p.m. By the time Detective Luther arrived, defendant was already "detained in another detective's vehicle [.]" After searching the hotel room and seizing evidence, officers searched "the 2000 Cadillac DeVille that [defendant] was stopped and detained in."
The evidence thus showed that defendant was surveilled and observed to be the sole driver and occupant of the Cadillac for, at most, one-and-a-half hours on the afternoon of his arrest. Cf. State v. Calvino , 179 N.C.App. 219, 222-23, 632 S.E.2d 839, 842-43 (2006) (finding sufficient evidence of keeping a motor vehicle for the purpose of selling a controlled substance, where informant purchased drugs from defendant in the same vehicle on two separate occasions, one week apart, and "[b]oth of these transactions were observed and recorded by police."); State v. Bright , 78 N.C.App. 239, 240, 337 S.E.2d 87, 87 (1985) (upholding defendant's conviction under N.C. Gen. Stat. § 90-108(a)(7), and noting that defendant was stopped while driving a car arresting officer "had seen defendant operating ... on several occasions."). The evidence did not show that defendant had "maintained possession ... of the [Cadillac] continuously and without variation " for anything beyond a couple of hours on that single day. See Hudson , 206 N.C.App. at 492, 696 S.E.2d at 584 (emphasis added).
The evidence showed only that, earlier on the day of defendant's arrest, officers received information from two individuals pulled in an unrelated traffic stop indicating they should look for defendant in a specific vehicle and at a specific hotel room. The State failed to establish that no other individual accessed, occupied, operated, or otherwise used the Cadillac prior to the brief period officers surveilled defendant on the afternoon of his arrest. See State v. Boswell , --- N.C. App. ----, 680 S.E.2d 901, 2009 WL 2139184 at *3 (2009) (unpublished) (finding *97 insufficient evidence of keeping or maintaining a vehicle, where "the vehicle driven by defendant was owned by his father, and numerous people were allowed to use the vehicle on a regular basis."). The Cadillac was registered in the name of another individual, whose criminal history included a prior drug charge. Detective Luther testified he "didn't know whether or not [that individual] was at [the Econo Lodge] hotel room" on 8 August 2013 "before the [surveillance] started [.]" Detective Luther also testified several items were found in the Cadillac, including a hat, that he "couldn't classify [as belonging to defendant]." He testified only that "[b]ased off of the information that was provided to [him], [he] had reason to believe [defendant] had been in that car for quite some time and was using that vehicle."
Even if, as Detective Luther contended, there was reason to believe defendant had been "in possession of [the Cadillac] for some period of time," there was insufficient evidence that defendant used that vehicle on any prior occasion for the purpose of keeping or selling a controlled substance , which N.C. Gen. Stat. § 90-108(a)(7) requires. See , e.g. , State v. Craven , 205 N.C.App. 393, 403, 696 S.E.2d 750, 756 (2010), rev'd in part on other grounds , 367 N.C. 51, 744 S.E.2d 458 (2013) (finding sufficient evidence of keeping and maintaining a vehicle under N.C. Gen. Stat. § 90-180(a)(7), where witness testified she and defendant transported cocaine in the vehicle on two separate dates, and expert testified defendant was found to possess cocaine in the vehicle on a third date; evidence was "adequate to support a conclusion that defendant had possession of cocaine in his mother's car over a duration of time and/or on more than one occasion " (emphasis added)); cf. State v. Horton , 189 N.C.App. 211, 657 S.E.2d 448, 2008 WL 565485 at *2 (2008) (unpublished) (finding insufficient evidence of keeping or maintaining a vehicle, where "the vehicle driven by [d]efendant was owned by another person and loaned to him on the day he was pulled over and searched. No evidence was presented that [d]efendant used this vehicle on any other occasion to keep a controlled substance"). On the afternoon of defendant's arrest, surveilling officers did not report seeing defendant "[go] to [the Cadillac's] gas cap [or] open[ ] and close[ ] the gas cap." However, this was insufficient to support an inference that the drugs found in the Cadillac's locked gas cap had been hidden in the car on a prior date, because nothing was known about the use or maintenance of the vehicle prior to 3:00 or 3:30 p.m. that day , much less in the preceding days or months.
The receipt found in the Cadillac was likewise insufficient to "support[ ] a logical and legitimate deduction" that defendant had used the Cadillac on a previous occasion to keep or sell drugs. State v. Pigott , 331 N.C. 199, 207, 415 S.E.2d 555, 559-60 (1992) (noting evidence is insufficient to withstand a motion to dismiss if it "merely raise[s] a suspicion or conjecture" as to the existence of a fact in issue). Detective Luther testified "[it was] not [his] contention that the receipt [found in the Cadillac] was in any way involved in any drug-related matter[.]" He further conceded he "[didn't] know if [the receipt] was in [the Cadillac] the day before [8 August 2013]." The receipt did not amount to substantial evidence that defendant had used the Cadillac, over a period of time , to keep or sell a controlled substance .
Because the State failed to demonstrate continuous maintenance or possession of the Cadillac by defendant beyond the period of time he was surveilled on the afternoon of his arrest, or show that defendant had used the Cadillac on a prior occasion to keep or sell drugs, it could not rely on evidence seized from the hotel room to support a charge under N.C. Gen. Stat. § 90-108(a)(7). The evidence showed defendant possessed drugs in the Cadillac on one occasion. There was insufficient evidence to show that, even on the day of his arrest, defendant's use and control of the Cadillac was exclusive. While there was evidence, obtained from two individuals who happened to be arrested earlier on the same day as defendant's arrest, that defendant "possessed" the Cadillac "for some period of time," there was insufficient evidence to show defendant had used the vehicle on any prior occasion for *98 keeping or selling a controlled substance. Accordingly, the trial court should have dismissed the charge of maintaining a vehicle for the purpose of keeping or selling a controlled substance. We reverse the trial court's denial of defendant's motion to dismiss that charge, and remand for resentencing.
III. Plain Error
In his remaining arguments, defendant contends that the trial court committed various errors which were not properly preserved by objection. We therefore review them for plain error.
A. Standard of Review
"In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4) ; see also State v. Goss , 361 N.C. 610, 622, 651 S.E.2d 867, 875 (2007), cert. denied , 555 U.S. 835, 129 S.Ct. 59, 172 L.Ed.2d 58 (2008).
The North Carolina Supreme Court "has elected to review unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence." State v. Gregory , 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996).
For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. See [State v.] Odom, 307 N.C. [655] at 660, 300 S.E.2d [375] at 378 [ (1983) ]. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error "had a probable impact on the jury's finding that the defendant was guilty." See id. (citations and quotation marks omitted); see also [State v.] Walker, 316 N.C. [33] at 39, 340 S.E.2d [80] at 83 [ (1986) ] (stating "that absent the error the jury probably would have reached a different verdict" and concluding that although the evidentiary error affected a fundamental right, viewed in light of the entire record, the error was not plain error).
State v. Lawrence, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012).
B. Defendant's Conduct
Defendant first contends that the trial court committed plain error in admitting the opinions of detectives regarding defendant's conduct. We disagree.
Defendant contends that Detective Luther and Lt. Wyatt offered improper opinions "to the effect that Mr. Rogers was a drug dealer". Defendant contends that their testimony about the manner in which defendant conducted himself with regards to both the hotel room and the vehicle, and Detective Luther's testimony that the baggies of cocaine found in defendant's hotel room were "indicative of sale, not use" conveyed to the jury that defendant was a drug dealer. In essence, defendant contends that the testimony of Detective Luther and Lt. Wyatt invaded the province of the jury by constituting an opinion of defendant's guilt.
In the instant case, Detective Luther testified that he has "investigated or been assisting" fifty drug cases involving hotels and motels. He testified that, in his experience in these investigations, there are "common characteristics" associated with such cases. He then testified, again based on his experience, that defendant's conduct in how he rented the hotel room and kept it mostly bare was consistent with the patterns he had observed in prior drug cases. He further testified that, based on his experience, the plastic baggies found in the bathroom were of a sort commonly associated with the sale, not the personal use, of drugs.
Lt. Wyatt testified to his observations when defendant arrived at the hotel. Specifically, he testified that, shortly after entering the room, defendant opened the blinds on the window. He testified that, in his experience, "people that are involved in the narcotics trade like to keep an eye outside their houses for law enforcement, [or] potential buyers[.]" Lt. Wyatt also testified that, when defendant left the hotel, he drove to an apartment complex, drove onto another road, then turned around and went back in the direction from which he came. He testified that this was common to drug dealers, as it was "[i]indicative of someone seeing if they're being followed."
*99 We hold that the testimony of Detective Luther and Lt. Wyatt was not improper opinion testimony concerning defendant's guilt, but rather ordinary testimony expressing their own experience and observations. On plain error review, the burden falls to defendant to demonstrate that, absent the admission of this testimony, the jury probably would have reached a different verdict. In light of the fact that this testimony was based upon the officers' own experience and knowledge, and in light of the physical evidence of drugs and paraphernalia found in the hotel room and vehicle, we hold that defendant has failed to meet the burden of showing plain error.
This argument is without merit.
C. Hearsay Evidence
In his next argument, defendant contends that the trial court erred by admitting alleged hearsay testimony. Specifically, defendant contends that the trial court erred by allowing Detective Luther to testify about information collected from non-testifying witnesses during an investigation of defendant because it was hearsay. We disagree.
"Hearsay is defined as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.' " State v. Morgan , 359 N.C. 131, 154, 604 S.E.2d 886, 900 (2004) (quoting N.C. Gen. Stat. § 8C-1, Rule 801(c) (2003) ). "Hearsay is not admissible except as provided by statute or by these rules." N.C. Gen. Stat. § 8C-1, Rule 802 (2015). In State v. Rollins , regarding the testimony given by an agent about information he learned from a third-party, this Court held that "statements are not hearsay if they are made to explain the subsequent conduct of the person to whom the statement was directed." State v. Rollins , 226 N.C.App. 129, 138-39, 738 S.E.2d 440, 448 (2013) (citation and quotations omitted).
In the instant case, Detective Luther testified that he spoke about defendant during his investigation with several people involved with the distribution of drugs. Detective Luther stated that he received information about defendant's vehicle, location, telephone number, and other addresses at which defendant may be located from the people he interviewed.
We have previously held that hearsay testimony given by an informant to the witness concerning a defendant's conduct was admissible to "explain how the investigation of [d]efendants unfolded, why [d]efendants were under surveillance ... and why [the witness] followed the [defendants'] vehicle [.]" State v. Wiggins , 185 N.C.App. 376, 383-84, 648 S.E.2d 865, 871 (2007) ; see also State v. Ley v a , 181 N.C.App. 491, 500, 640 S.E.2d 394, 399 (2007) (holding that an informant's explanation was admissible to explain an officer's presence at a restaurant); State v. Batchelor , 202 N.C.App. 733, 737, 690 S.E.2d 53, 56 (2010) (holding that an informant's identification of the defendant was admissible to explain the officer's presence at a car wash, rather than to prove the defendant's guilt).
In the instant case, it is clear that the testimony at issue was not introduced to prove defendant's guilt, but to establish the background and reasons for Detective Luther's investigation. We hold that defendant has failed to show that, absent this evidence, the jury probably would have reached a different verdict.
This argument is without merit.
D. Drug Investigations and Arrest Warrants
Defendant lastly contends that the trial court committed plain error by admitting testimony that defendant was the subject of prior investigations and had outstanding warrants. We disagree.
Defendant contends that the evidence was hearsay and irrelevant and should not have been admitted. However, much like the evidence of Detective Luther's sources, this evidence was not admitted for the truth of the matter asserted, but to explain detectives' conduct. Specifically, this evidence was introduced at trial to explain Detective Luther's instruction to his assisting detectives to detain defendant pending the execution of the search warrant. The assisting detectives were able to do so due to the outstanding warrants on which defendant was wanted.
*100 This evidence was not introduced to demonstrate that defendant was guilty of the instant offenses or any others, but rather to explain the context of the police investigation. As such, we hold that defendant has not shown that, absent this evidence, the jury probably would have reached a different verdict.
This argument is without merit.
IV. Conclusion
Because the evidence, taken in the light most favorable to the State, did not support the elements of the charge of maintaining a vehicle for keeping or selling a controlled substance, the trial court erred in denying defendant's motion to dismiss. That denial is therefore reversed, and this matter is remanded for resentencing. Because defendant has failed to show that, absent the additional errors he alleges, the jury would probably have reached a different verdict, we hold that he has failed to demonstrate plain error.
NO ERROR IN PART; REVERSED AND REMANDED IN PART.
Chief Judge McGEE concurs.
Judge STROUD concurs in part and dissents in part by separate opinion.