MURPHY, Judge.
 

 *480
 
 Trevon Deandre ("Defendant") appeals from his convictions for two counts of possession of stolen goods in violation of N.C.G.S. § 14-71.1 (2015). On appeal, he contends that the trial court erred by denying his motions to dismiss the charges on the ground that the State failed to offer sufficient evidence that he constructively possessed two stolen firearms that were found in a van he had rented. After careful review, we reject Defendant's arguments and conclude that he received a fair trial free from error.
 

 Factual Background
 

 The State presented evidence at trial tending to establish the following facts: On 26 April 2014, Ronald Bryant called the Rocky Mount Police Department to report that his home had been broken into and that various items of his personal property, including his .9 millimeter Smith & Wesson handgun ("the Smith & Wesson"), had been stolen. Eleven days
 
 *481
 
 later on 7 May 2014, Christian Boswell's home in Rocky Mount was broken into and, among other items of personal property, Boswell's .380 millimeter Kel-Tec semi-automatic pistol ("the Kel-Tec") was stolen.
 

 On the same day Boswell's home was robbed, Terry Reeves ("Reeves") was driving by Brandy Braswell's house in Rocky Mount and noticed that a van was parked in the driveway. He returned and observed that the van's rear doors were open and he saw two men walking around the house. Upon seeing Reeves, the two men ran back to the van, pulled onto Flood Store Road, and took off. Reeves was, however, able to get the van's license plate number before he lost sight of it.
 

 Detective Jack Sewell ("Detective Sewell") with the Edgecombe County Sheriff's Office was assigned as the lead investigator on the case. Upon looking into the license plate number of the van, Detective Sewell determined that it was owned by H & J Auto Sales Company ("H & J"). Detective Sewell drove to H & J and spoke with the owner who informed him that the van in question had been rented to Shirelanda Clark ("Clark").
 

 Detective Sewell reached out to Clark who informed him that she, in turn, had rented the van to Defendant and Dezmon Bullock ("Bullock"). She stated that Defendant had paid her $35.00 to use the van and that he was going to return it to her on 8 May 2014. Detective Sewell asked Clark to call him if Bullock or Defendant contacted her again.
 

 On 8 May 2014, Clark reached out to Detective Sewell and told him that Defendant had called her and asked to rent the van for a few more days and that he had arranged to meet her close to the car lot shortly. Detective Sewell drove to the lot to meet with Clark and called Officer Jill Tyson ("Officer Tyson") to assist him as backup.
 

 Defendant arrived and parked the van around the corner from the car lot and walked over to Clark while Bullock, who had accompanied Defendant, remained in the vehicle. Officer Tyson parked her patrol vehicle behind the van while Detective Sewell confronted Defendant in the parking lot.
 

 Detective Sewell, Clark, and Defendant walked over to the van, and while they were approaching, Bullock exited the vehicle. Defendant, Clark, and Bullock all gave Detective Sewell and Officer Tyson permission to search the van. Detective Sewell and Officer Tyson began searching the vehicle and discovered, among other items, a new basketball goal still in its box which Defendant claimed
 
 *434
 
 ownership of, for which he said he had lost the receipt.
 
 *482
 
 After claiming ownership of the basketball goal, Defendant suddenly and abruptly stated that he had an appointment and had to leave. Defendant then left the area leaving his personal property-including the basketball goal-behind.
 

 Officer Tyson continued her consent search of the van and found Bryant's Smith & Wesson underneath the driver's seat of the vehicle. She also discovered several cameras, an alarm clock, assorted pieces of a gaming system, cigars, and a set of scales in the van. Officer Tyson then found Boswell's Kel-Tec underneath the front passenger seat.
 

 Warrants were issued and Defendant was arrested. On 8 September 2014, Defendant was indicted on charges of breaking and entering Boswell's residence, larceny after breaking and entering, and possession of a stolen firearm. On 8 June 2015, a superseding indictment was filed in relation to these charges. On 13 October 2014, Defendant was also indicted for possession of a stolen firearm in connection with Bryant's Smith & Wesson. A superseding indictment as to this charge was also subsequently filed on 8 June 2015.
 

 A jury trial was held before the Honorable Alma L. Hinton in Edgecombe County Superior Court on 23 February 2016 and 24 February 2016. At trial, Defendant moved at the close of the State's evidence and at the close of all of the evidence to dismiss the charges of possession of stolen goods on the ground that he did not constructively possess either of the stolen firearms. The trial court denied Defendant's motions.
 

 The jury found Defendant guilty of both counts of felonious possession of stolen goods as to the firearms and acquitted Defendant of the felony breaking and entering and felony larceny charges. The trial court sentenced Defendant to consecutive sentences of 6 to 17 months imprisonment. Defendant gave oral notice of appeal in open court.
 

 Analysis
 

 Defendant argues on appeal that the trial court erred in denying his motions to dismiss the possession of stolen goods charges. Specifically, he contends that the State failed to present sufficient evidence to establish that he constructively possessed either the Kel-Tec or the Smith & Wesson that were found in the van he was renting. We disagree.
 

 The trial court's denial of a motion to dismiss is reviewed
 
 de novo
 
 on appeal. Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense
 
 *483
 
 charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.
 

 State v. Pressley
 
 ,
 
 235 N.C.App. 613
 
 , 616,
 
 762 S.E.2d 374
 
 , 376 (internal citations and quotation marks omitted),
 
 disc. review denied
 
 , --- N.C. ----,
 
 763 S.E.2d 382
 
 (2014). Furthermore, "[w]hen ruling on a motion to dismiss for insufficient evidence, the trial court must consider the record evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor."
 
 State v. Worley
 
 ,
 
 198 N.C.App. 329
 
 , 333,
 
 679 S.E.2d 857
 
 , 861 (2009).
 

 It is well settled that:
 

 The essential elements of felonious possession of stolen property are: (1) possession of personal property, (2) which was [feloniously stolen], (3) the possessor knowing or having reasonable grounds to believe the property to have been [feloniously stolen], and (4) the possessor acting with a dishonest purpose.
 

 State v. McQueen
 
 ,
 
 165 N.C.App. 454
 
 , 459,
 
 598 S.E.2d 672
 
 , 676 (2004),
 
 disc. review denied
 
 ,
 
 359 N.C. 285
 
 ,
 
 610 S.E.2d 385
 
 (2005). "Possession of stolen goods may be either actual or constructive."
 
 State v. Phillips
 
 ,
 
 172 N.C.App. 143
 
 , 146,
 
 615 S.E.2d 880
 
 , 882 (2005). Our Supreme Court has maintained that "[a] defendant constructively possesses contraband when he or she has the intent and capability to maintain control and dominion over it."
 
 State v. Miller
 
 ,
 
 363 N.C. 96
 
 , 99,
 
 678 S.E.2d 592
 
 , 594 (2009) (citation and quotation marks omitted).
 

 Here, Defendant argues that because he did not have exclusive control over the van-given
 
 *435
 
 that Bullock also had the ability to control the vehicle-he cannot have constructively possessed the stolen Kel-Tec and Smith & Wesson without other incriminating circumstances. While Defendant is correct that he did not have exclusive possession of the van as he did, in fact, possess it jointly with Bullock, there were other incriminating circumstances that would allow a determination that Defendant constructively possessed the stolen firearms.
 

 We have consistently maintained that "unless a defendant has exclusive possession of the place where the contraband is found, the State must show other incriminating circumstances sufficient for the jury to find a defendant had constructive possession."
 
 State v. Hudson
 
 ,
 
 206 N.C.App. 482
 
 , 489-90,
 
 696 S.E.2d 577
 
 , 583 (citation, quotation marks, and brackets omitted),
 
 disc. review denied
 
 ,
 
 364 N.C. 619
 
 ,
 
 705 S.E.2d 360
 
 (2010).
 

 *484
 
 Incriminating circumstances relevant to constructive possession include evidence that defendant: (1) owned other items found in proximity to the contraband; (2) was the only person who could have placed the contraband in the position where it was found; (3) acted nervously in the presence of law enforcement; (4) resided in, had some control of, or regularly visited the premises where the contraband was found; (5) was near contraband in plain view; or (6) possessed a large amount of cash.
 

 Evidence of conduct by the defendant indicating knowledge of [contraband] or fear of discovery is also sufficient to permit a jury to find constructive possession. Our determination of whether the State presented sufficient evidence of incriminating circumstances depends on the totality of the circumstances in each case. No single factor controls, but ordinarily the questions will be for the jury.
 

 State v. Alston
 
 ,
 
 193 N.C.App. 712
 
 , 716,
 
 668 S.E.2d 383
 
 , 386-87 (2008) (internal citations, quotation marks, and emphasis omitted),
 
 aff'd per curiam
 
 ,
 
 363 N.C. 367
 
 ,
 
 677 S.E.2d 455
 
 (2009).
 

 At trial, Detective Sewell testified as follows:
 

 Q. So what happened after you took down their personal information?
 

 A. I asked Ms. Clark and Mr. Bullock and Mr. Rice if it was okay if I conducted a search of the inside of the van. They said, okay. We opened up the hatchback to the back of the van and located several items on the inside.
 

 Q. Do you have any recollection about what type of items they were?
 

 A. Yes, there was a basketball goal set still in a box, several cameras, an Ipod, some chisels, other items inside the van. I started questioning the subjects about the items inside the van.
 

 Q. And did Mr. Rice make any comment about any of the property inside the van?
 

 A. Mr. Rice said he had bought the basketball goal at a Walmart, but had no receipt. It was still in the box.
 

 *485
 
 Q. And without saying anything that Mr. Bullock may or may not have said, did you ask him about anything inside the van as well?
 

 A. Yes, sir, I did.
 

 Q. What happened next?
 

 A. Mr. Rice said he had to leave, that he had an appointment to make and he needed to leave. Well, at that time, I didn't have any evidence to charge him with a crime, no evidence of a crime so I let him go.
 

 Q. So at that initial point, he wasn't under arrest.
 

 A. He was not under arrest.
 

 Q. And he did, in fact, leave.
 

 A. He did.
 

 Here, we are satisfied that multiple indications of incriminating circumstances were present so as to survive Defendant's motion to dismiss. The State presented evidence of (1) Defendant's nervous disposition; (2) the fact that Defendant admitted ownership of the basketball goal in proximity to the stolen firearms; (3) had control over the van in which the stolen property was found by way of his agreement with Clark to rent the van for $35.00; and (4) exhibited irrational conduct tending to indicate he was fearful that the firearms would be discovered during the course of the search-specifically his sudden
 
 *436
 
 and abrupt departure from the area when Detective Sewell and Officer Tyson began the search of the van for an appointment he stated he had just remembered, in the process leaving behind his personal property for which he did not return.
 

 A rational juror could have concluded that Defendant suddenly leaving the area as soon as the search commenced amounted to a fearful apprehension on his part that Detective Sewell or Officer Tyson would ultimately locate the stolen firearms in the van which he controlled.
 
 See
 

 Hudson
 
 ,
 
 206 N.C.App. at 490
 
 ,
 
 696 S.E.2d at 583
 
 ("Examples of incriminating circumstances include a defendant's nervousness or suspicious activity in the presence of law enforcement."). Furthermore, even assuming that Defendant did, in fact, suddenly remember that he had an actual
 
 bona fide
 
 appointment, we note that otherwise innocent explanations for suspicious and incriminating behavior do not entitle Defendant to the granting of his motion to dismiss.
 
 See
 

 *486
 

 State v. Tirado
 
 ,
 
 358 N.C. 551
 
 , 582,
 
 599 S.E.2d 515
 
 , 536 (2004) ("Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. The jurors must decide whether the evidence satisfies them beyond a reasonable doubt that the defendant is guilty." (internal citation, quotation marks, and alteration omitted)),
 
 cert. denied
 
 ,
 
 544 U.S. 909
 
 ,
 
 125 S.Ct. 1600
 
 ,
 
 161 L.Ed.2d 285
 
 (2005). The State presented sufficient evidence that Defendant constructively possessed the stolen firearms.
 

 Because Defendant limits his argument on appeal exclusively as to whether the State established that he constructively possessed the firearms, we need not address the remaining elements of the offense of possession of stolen goods.
 

 Conclusion
 

 For the reasons stated above, we conclude that Defendant received a fair trial free from error.
 

 NO ERROR.
 

 Judges STROUD and DILLON concur.