STATE OF NORTH CAROLINA v. TYRONE ANTHONY LANE

No. COA03-510

(Filed 6 April 2004)

**1. Drugs— maintaining vehicle for keeping or selling controlled substances—motion to dismiss—plain error analysis**

The trial court did not commit plain error by failing to dismiss the charge of maintaining a vehicle for the purpose of keeping or selling controlled substances based on the holding in *State v. Best*, 292 N.C. 294 (1977), because that case focused solely on the role of medical practitioners and there is no indication that it applies to laymen.

**2. Drugs— maintaining vehicle for keeping or selling controlled substances—motion to dismiss—sufficiency of evidence**

The trial court erred by denying defendant's motion to dismiss the charge of maintaining a vehicle for the purpose of keeping or selling controlled substances because the evidence does not indicate possession of cocaine in the vehicle that occurred over a duration of time, nor is there evidence that defendant had used the vehicle on a prior occasion to sell cocaine.

**3. Drugs— possession of cocaine with intent to sell or deliver—motion to dismiss—constructive possession**

The trial court did not err by denying defendant's motion to dismiss the charge of possession of cocaine with intent to sell or deliver based on his constructive possession of cocaine found in a car driven by defendant but owned by another, because sufficient incriminating circumstances supported an inference of constructive possession including the officer's investigation of defendant, their later struggle, the subsequent police search for defendant, and the fact that the vehicle defendant had driven where the controlled substance was found remained locked.

**4. Constitutional Law— double jeopardy—multiple punishment—credit for days served**

The trial court did not err by failing to dismiss the habitual felon indictment based on double jeopardy even though defendant was served with a warrant for his arrest on the habitual felon indictment and spent four days in jail until he could post an additional bond, because the record reflects that the trial court gave defendant credit for those four days when it sentenced defendant on the substantive felonies.

**5. Sentencing— habitual felon indictment—right to arraignment—waiver**

The trial court did not err by proceeding to trial, over defendant's objection, on the habitual felon indictment during the same week as his arraignment on that charge, because defendant waived his right to arraignment and cannot raise violations of N.C.G.S. § 15A-943 as grounds for a new trial when he failed to make a written request for an arraignment on the habitual felon charge.

Appeal by defendant from judgments dated 6 September 2002 by Judge Thomas D. Haigwood in New Hanover County Superior Court. Heard in the Court of Appeals 26 February 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Newton Pritchett, for the State.*

*Robert T. Newman, Sr. for defendant-appellant.*

BRYANT, Judge.

Tyrone Anthony Lane (defendant) appeals judgments dated 6 September 2002 entered consistent with a jury verdict finding him guilty of possession of cocaine with intent to sell or deliver, assault on a law enforcement officer, resisting, delaying or obstructing a public officer, driving while license revoked (01 CRS 29254), intentionally keeping or maintaining a vehicle for the purpose of keeping or selling controlled substances (01 CRS 29255), and having attained the status of habitual felon (02 CRS 1919).

At trial, Deputy Michael Howe testified he was in uniform but driving an unmarked patrol car on 5 December 2001. He was on the lookout for two brothers for whom arrest warrants had been issued when he spotted defendant driving a vehicle "at a low rate of speed." Defendant was driving in an area Deputy Howe often frequented when "attempting to locate subjects" with outstanding arrest warrants. Deputy Howe observed that defendant was not wearing a seatbelt. His suspicion aroused, Deputy Howe pulled in behind defendant's vehicle to follow it. Defendant operated his right turn signal but, after making "a few jerky motions with his head," turned left while the right turn signal was still blinking. Deputy Howe thought defendant might have recognized the license plates on his vehicle and become nervous. The officer was about to conduct a stop of defendant's vehicle when defendant made "a sharp, last-minute" turn onto another street. After following defendant to a parking lot, Deputy Howe next saw defendant standing on the driver's side of his vehicle and then observed his walking away. In fear that defendant "was going to take off running," Deputy Howe continued to follow defendant in his patrol car. No other person was in the vicinity.

Deputy Howe finally approached defendant and explained he had observed defendant driving without his seatbelt. Defendant nodded in response and stopped walking. When Deputy Howe asked to see defendant's driver's license, defendant replied he did not have one. After Deputy Howe had written down defendant's name, defendant started to walk away. Deputy Howe requested defendant to "step back towards [him]." Instead of complying, defendant pointed between two buildings, stating his intention to walk toward them, and continued in that direction. Deputy Howe warned defendant that he was conducting an investigation and would detain defendant if he did not stop walking. Deputy Howe spoke in a calm voice because defendant "appeared to be very nervous about something." Deputy

Howe asked defendant to step over to his patrol car where he conducted a pat-down search of defendant to check for weapons. During the frisk, Deputy Howe came across an object in defendant's left jeans pocket. When Deputy Howe squeezed the item from the outside of defendant's clothing, defendant "jerked around," almost hitting the officer's face with his elbow. During the struggle that ensued, defendant "was able to throw something [in]to his mouth." Deputy Howe did not get a chance to see what that "something" was but noted that it came from defendant's pocket. As Deputy Howe "attempted to take [defendant] down to the ground" to place him under arrest for resisting an officer, defendant "repeatedly struck [him] in the face." Deputy Howe tried to get to his radio to call for assistance, but defendant struck "the mike" with his hand foiling the officer's attempt. Defendant then started running. Deputy Howe initially gave chase. After a short distance, however, Deputy Howe returned to his vehicle, which was still running, and radioed for assistance in setting up a perimeter to detain defendant. Defendant was eventually found hiding underneath a pickup truck.

Following defendant's arrest, Deputy Howe returned to the parking lot to check on defendant's vehicle. Deputy Howe walked around the vehicle, noting that all the doors were locked and windows closed. Unable to find the keys to the vehicle, Deputy Howe ran its tags to contact the owner but was unsuccessful. A "wrecker service" was called to unlock the vehicle doors. After unlocking the doors, a canine unit conducted an exterior and interior sniff of the vehicle. On the exterior, the police dog alerted to the driver's door handle; and in the interior, it alerted "to the area of the front seat in between the front driver seat and the front passenger seat." When the canine officer checked the area between the front seats, he found a white envelope containing eight small Ziploc bags of cocaine. The parties stipulated that the envelope contained 4.4 grams of cocaine.

The issues are whether the trial court erred in: (I) denying defendant's motion to dismiss the charges of maintaining a vehicle for the purpose of keeping or selling controlled substances and possession of cocaine with intent to sell or deliver; (II) failing to dismiss the habitual felon indictment based on double jeopardy; and (III) overruling defendant's objection to being tried on the habitual felon charge during the same week as his arraignment on that charge.

I

*Maintaining a Vehicle*

**[1]** Defendant first argues the trial court committed plain error by failing to dismiss the charge of maintaining a vehicle for the purpose of keeping or selling controlled substances based on our Supreme Court's holding in *State v. Best*, 292 N.C. 294, 233 S.E.2d 544 (1977). We disagree. In *Best*, our Supreme Court analyzed the North Carolina Controlled Substances Act and determined that a medical doctor could not be convicted for the sale and delivery of a controlled substance pursuant to N.C. Gen. Stat. § 90-95. *Id.* Instead, any violation by a medical professional would be governed by N.C. Gen. Stat. § 90-108. *Id.* at 310, 233 S.E.2d at 554. In this case, defendant appears to be basing his argument on the proposition that the holding in *Best* extends to laymen and therefore precludes a conviction of maintaining a vehicle for the purpose of keeping or selling controlled substances under N.C. Gen. Stat. § 90-108(a)(7). As the decision in *Best* focused solely on the role of medical practitioners, there is no indication that it applies to laymen. Accordingly, this assignment of error is overruled.

**[2]** Alternatively, defendant assigns as error the trial court's denial of his motion to dismiss the charge due to insufficiency of the evidence. Specifically, defendant contends that evidence of drugs found in a vehicle on one occasion, without more, is insufficient to support the conclusion he maintained a vehicle for the purpose of keeping or selling controlled substances.

Upon review of a motion to dismiss, the court determines whether there is substantial evidence, viewed in the light most favorable to the State, of each essential element of the offense charged and of the defendant being the perpetrator of the offense. *State v. Stancil*, 146 N.C. App. 234, 244, 552 S.E.2d 212, 218 (2001), *aff'd as modified*, 355 N.C. 266, 559 S.E.2d 788 (2002) (per curiam); *State v. Compton*, 90 N.C. App. 101, 103, 367 S.E.2d 353, 355 (1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franklin*, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990).

In *State v. Dickerson*, this Court held that one isolated incident of a defendant having been seated in a motor vehicle while selling a controlled substance is insufficient to warrant a charge to the jury of keeping or maintaining a motor vehicle for the sale and/or delivery of

that substance. *State v. Dickerson*, 152 N.C. App. 714, 716, 568 S.E.2d 281, 282 (2002). This Court reasoned:

> Pursuant to N.C. Gen. Stat. § 90-108(a)(7), it is illegal to "knowingly keep or maintain any . . . vehicle . . . which is used for the keeping or selling of [controlled substances]." The statute thus prohibits the keeping or maintaining of a vehicle only when it is used for "keeping or selling" controlled substances. As stated by our Supreme Court in *State v. Mitchell*, the word "'[k]eep' . . . denotes not just possession, but possession that occurs over a duration of time." Thus, the fact "[t]hat an individual within a vehicle possesses marijuana on one occasion cannot establish . . . the vehicle is 'used for keeping' marijuana; nor can one marijuana cigarette found within the car establish that element." Likewise, the fact that a defendant was in his vehicle on one occasion when he sold a controlled substance does not by itself demonstrate the vehicle was kept or maintained to sell a controlled substance.

*Id.* (quoting N.C.G.S. § 90-108(a)(7) (2001) and *State v. Mitchell*, 336 N.C. 22, 32-33, 442 S.E.2d 24, 30 (1994)) (alteration in original). The evidence in the case before us does not indicate possession of cocaine in the vehicle that occurred over a duration of time, nor is there evidence that defendant had used the vehicle on a prior occasion to sell cocaine. We therefore agree with defendant that his motion to dismiss should have been granted.

### Possession of Cocaine

[3] Defendant next contends the trial court erred in denying his motion to dismiss the charge of possession of cocaine with intent to sell or deliver because the evidence was insufficient on the element of constructive possession.

> An accused has possession of [a controlled substance] within the meaning of the [North Carolina] Controlled Substances Act when he has both the power and intent to control its disposition. The possession may be either actual or constructive. Constructive possession of [a controlled substance] exists when the accused is without actual personal dominion over the material, but has the intent and capability to maintain control and dominion over it.

*State v. Wiggins*, 33 N.C. App. 291, 292-93, 235 S.E.2d 265, 267 (1977). Naturally, "power and intent to control [a] controlled substance can

exist only when one is aware of its presence." *State v. Matias*, 143 N.C. App. 445, 448, 550 S.E.2d 1, 3, *aff'd*, 354 N.C. 549, 556 S.E.2d 269 (2001). This Court has previously emphasized that " 'constructive possession depends on the totality of the circumstances in each case. No single factor controls, but ordinarily the questions will be for the jury.' " *State v. Butler*, 147 N.C. App. 1, 11, 556 S.E.2d 304, 311 (2001) (citation omitted) (emphasis omitted), *aff'd*, 356 N.C. 141, 567 S.E.2d 137 (2002). "The State is not required to prove that the defendant . . . was the only person with access to [the controlled substance]," *State v. Rich*, 87 N.C. App. 380, 382, 361 S.E.2d 321, 323 (1987); however, if control of the area in which the controlled substance is found is not exclusive, "constructive possession of the contraband materials may not be inferred without other incriminating circumstances." *State v. Brown*, 310 N.C. 563, 569, 313 S.E.2d 585, 589 (1984).

Here, defendant contends his control over the vehicle he was driving was not exclusive because he was not the vehicle's owner and he had left it unattended after Deputy Howe approached him. As such, defendant argues the State's evidence of his presence in the vehicle was insufficient to support the charge in the absence of additional incriminating circumstances. Concluding that this case presents sufficient additional incriminating circumstances, we disagree.

The evidence showed Deputy Howe observed defendant driving "at a low rate of speed" in a vehicle containing an envelope with eight small Ziploc bags of cocaine apparently prepackaged for sale. Defendant's driving became evasive after Deputy Howe's patrol car approached defendant's vehicle from behind. When Deputy Howe finally confronted defendant in the parking lot, "[i]t was apparent [to Deputy Howe] that [defendant] was attempting to . . . get away from [him]." The subsequent weapon's frisk resulted in forceful resistance by defendant after Deputy Howe began inspecting an object in defendant's jeans pocket. During the struggle that followed, defendant appeared to be destroying evidence by placing an object in his mouth. Ultimately, defendant fled. *See, e.g., State v. Neal*, 109 N.C. App. 684, 687-88, 428 S.E.2d 287, 290 (1993) (sufficient incriminating circumstances supporting an inference of constructive possession where a large amount of cash was found on the defendant's person at the time of arrest and there was evidence from which a jury might infer an attempt to flee from the area where illegal drugs were found); *see also State v. Weems*, 31 N.C. App. 569, 571, 230 S.E.2d 193, 194 (1976) ("evidence which places an accused within close juxtaposition

to a narcotic drug under circumstances giving rise to a reasonable inference that he knew of its presence may be sufficient to justify the jury in concluding that it was in his possession"). We further note that during the officer's investigation of defendant, their later struggle, and the subsequent police search for defendant, the vehicle defendant had driven remained locked. Based on these "other incriminating circumstances," defendant's argument notwithstanding, a juror could reasonably infer defendant had the power and intent to control the cocaine found next to the driver's seat in the vehicle and therefore constructively possessed the cocaine. The trial court thus did not err in denying defendant's motion to dismiss the possession charge.

## II

[4] Defendant also assigns as error the trial court's failure to dismiss the habitual felon indictment based on double jeopardy. In his brief to this Court, defendant states he was served with the substantive felony warrants, arrested, and later released on bond. Approximately two months later, defendant was served with a warrant for his arrest on the habitual felon indictment, whereupon he spent four days in jail until he could post an additional bond. Defendant now argues the four days he was imprisoned on the habitual felon warrant amounted to multiple punishments for the same offense in violation of double jeopardy. The record, however, reflects that the trial court, in sentencing defendant on the substantive felonies, gave defendant credit for those four days. Defendant's argument is therefore without merit.

## III

[5] Finally, defendant asserts the trial court erred in proceeding to trial, over his objection, on the habitual felon indictment in the same week as his arraignment on the charge. Defendant relies on N.C. Gen. Stat. § 15A-943, which provides in subsection (a) that in counties where there are twenty or more weeks per year of trial sessions of superior court at which criminal cases are heard, arraignments must be scheduled "on at least the first day of every other week in which criminal cases are heard," and in subsection (b) that "[w]hen a defendant pleads not guilty at an arraignment required by subsection (a), he may not be tried without his consent in the week in which he is arraigned."[1] N.C.G.S. § 15A-943 (2003). Defendant argues that no

---

1. The State argues in its brief to this Court that a defendant need not be arraigned on a habitual felon charge. Considering the purpose of an arraignment and this Court's previous application of the law on arraignments in the habitual felon context, we reject this proposition. See N.C.G.S. § 15A-941(a) (2003) ("[a]rraignment con-

arraignment was scheduled according to section 15A-943(a) and, when the trial court did arraign him on 3 September 2002 on the habitual felon charge, he objected to proceeding to trial on the same day he was arraigned but was denied the one-week interval between arraignment and trial to which he was entitled under section 15A-943(b).

Our Supreme Court has held that it is reversible error to proceed with trial on the same day as arraignment without the defendant's consent. *State v. Shook*, 293 N.C. 315, 319-20, 237 S.E.2d 843, 847 (1977). Where, however, a defendant fails to file "a written request with the clerk of superior court for an arraignment not later than 21 days after service of the bill of indictment . . . [or, if applicable,] not later than 21 days from the date of the return of the indictment as a true bill,"[2] N.C.G.S. § 15A-941(d) (2003), he has waived his right to arraignment and cannot raise violations of section 15A-943 as grounds for a new trial, *see State v. Trull*, 153 N.C. App. 630, 633-34, 571 S.E.2d 592, 595 (2002) (rejecting the defendant's claim of section 15A-943 violations in the absence of a written arraignment request in the record), *disc. review denied and appeal dismissed*, 356 N.C. 691, 578 S.E.2d 597 (2003). As previously held by this Court, "it would be illogical to require the State to schedule an arraignment pursuant to one statute where the right to such has been waived pursuant to another." *Id.* at 634, 571 S.E.2d at 595. As the record in this case contains no written request by defendant for an arraignment on the habitual felon charge, this assignment of error is overruled.

Defendant's conviction of maintaining a vehicle for the purpose of keeping or selling controlled substances is vacated and this case remanded for resentencing.

Vacated in part and remanded.

Judges TIMMONS-GOODSON and ELMORE concur.

---

sists of bringing a defendant in open court . . . , advising him of the charges pending against him, and directing him to plead"); *e.g., State v. Brunson*, 120 N.C. App. 571, 578, 463 S.E.2d 417, 421 (1995) (applying standard arraignment law to habitual felon charge).

2. The habitual felon indictment in this case was returned as a true bill on 29 January 2002.