An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-218

NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

STATE OF NORTH CAROLINA

    v.

BOBBY GLENN AUTRY

Sampson County
Nos. 12 CRS 1593-5; 50683-4

Appeal by defendant from judgments entered 30 October 2013 by Judge Arnold O. Jones in Sampson County Superior Court. Heard in the Court of Appeals 21 July 2014.

*Attorney General Roy Cooper, by Assistant Attorney General Thomas J. Campbell, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Emily H. Davis, for defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Bobby Glenn Autry ("Defendant") appeals from judgments entered upon his convictions of three counts of felony possession of immediate precursor chemical with the intent to manufacture methamphetamine[1] (pseudoephedrine, sulfuric acid, and

_____

[1] While the judgment in 12 CRS 1594 and 50684 states "Poss/Dist Precursor Chemical (pseudoephedrine)" and "Poss/Dist Precursor Chemical (sulfuric acid)" respectively, the indictments and jury

ethyl ether), one count of trafficking in methamphetamine, one count of possession of methamphetamine, and one count of possession of drug paraphernalia. After careful review, we find no error.

The State's evidence tended to show the following facts. Defendant resided with his mother in a mobile home that was a two minute walk from his sister Wanda King's residence. Detective William Carr of the Sampson County Sherriff's Office drove to Ms. King's residence to determine if a stolen tractor was on the premises. Upon arrival, the detective saw a metal building located behind Ms. King's residence with a surveillance camera attached to it. He approached the building and found the door was locked. Defendant was standing inside the building at the sink. When Defendant saw the detective, he immediately opened the door. At that point, several agents from the sheriff's office arrived on the scene to assist Detective Carr. After obtaining consent from Ms. King, the officers assisted with Detective Carr's search for stolen property by examining the inside and surroundings of the metal building. They found

---

instructions were for possession of precursor chemical (pseudoephedrine; sulfuric acid) with intent to manufacture methamphetamine.

47 items of evidence consistent with the manufacture of methamphetamine, including pseudoephedrine tablets.

Defendant was charged with four counts of possession of precursor chemical (ethyl ether, sulfuric acid, pseudoephedrine, lithium); trafficking in methamphetamine; possession of drug paraphernalia; possession of methamphetamine; and manufacture of methamphetamine. The charge of manufacturing methamphetamine was dismissed for insufficient evidence and Defendant was found not guilty of possession of precursor chemical (lithium) with intent to manufacture methamphetamine. The trial court consolidated 12 CRS 1594 and 50684 and sentenced Defendant to 17 to 30 months in prison for possession of precursor chemicals (pseudoephedrine and sulfuric acid) with intent to manufacture methamphetamine. That sentence ran consecutively to Defendant's 70 to 84 month term for trafficking, 17 to 30 month term for possession of ethyl ether with intent to manufacture methamphetamine, 60-day term for possession of drug paraphernalia, and 17 to 30 month sentence, suspended for 36 months of supervised probation, for possession of methamphetamine.

Defendant's sole argument on appeal is that the trial court erred by denying his motion to dismiss the charge of felony

possession of precursor chemical pseudoephedrine with the intent to manufacture methamphetamine under N.C. Gen. Stat. § 90-95(d1)(2)(a) (2013). We disagree.

"Upon review of a motion to dismiss, the court determines whether there is substantial evidence, viewed in the light most favorable to the State, of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Lane*, 163 N.C. App 495, 499, 594 S.E.2d 107, 110 (2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984). "[T]he State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal[.]" *State v. Hill*, 365 N.C. 273, 275, 715 S.E.2d 841, 843 (2011) (citation and quotation marks omitted). If the evidence "is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion for nonsuit should be allowed. This is true even though the suspicion so aroused by the evidence is strong." *In*

*re Vinson*, 298 N.C. 640, 656–57, 260 S.E.2d 591, 602 (1979) (citation omitted).

It is unlawful to (1) possess a precursor chemical with (2) intent to manufacture methamphetamine. *See* N.C. Gen. Stat. § 90-95(d1)(2)(a). Defendant is not challenging his constructive possession of pseudoephedrine, an identified controlled substance and precursor chemical. *See* N.C. Gen. Stat. §§ 90-95 (d2)(37), 90-87(5) (2013). Instead, Defendant argues that because he was acquitted of possession of lithium with intent to manufacture methamphetamine, and because there was no evidence that he possessed ammonia, the State's evidence was insufficient to show that he possessed the pseudoephedrine tablets with intent to manufacture methamphetamine rather than for personal use. We are not persuaded.

N.C. Gen. Stat. § 90-87 (15) (2013) defines "manufacture" as:

> the production, preparation, propagation, compounding, conversion, or processing of a controlled substance by any means, whether directly or indirectly, artificially or naturally, or by extraction from substances of a natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis; and "manufacture" further includes any packaging or repackaging of the substance or labeling or relabeling of its container except that this term does not

> include the preparation or compounding of a controlled substance by an individual for his own use[.]

Our Supreme Court has stated that "[i]ntent is an attitude or emotion of the mind and is seldom, if ever, susceptible of proof by direct evidence, it must ordinarily be proven by circumstantial evidence, i.e., by facts and circumstances from which it may be inferred." *State v. Gammons*, 260 N.C. 753, 756, 133 S.E.2d 649, 651 (1963); *see also State v. Alderson*, 173 N.C. App. 344, 348, 618 S.E.2d 844, 847 (2005) (holding that intent to manufacture, sell and deliver methamphetamine could be inferred by circumstantial evidence including "numerous items . . . consistent with the manufacture of methamphetamine.").

Here, taken in the light most favorable to the State, we conclude that the State presented sufficient evidence from which a reasonable juror could infer an intent to manufacture methamphetamine. First, the State submitted into evidence a laboratory report which stated that the chemical makeup of all the methamphetamine found in the metal building included pseudoephedrine. Second, SBI Special Agent Amanda Aharon, a forensic chemist, testified and confirmed that the methamphetamine recovered from Defendant was manufactured using the ammonia method, which requires ethyl ether, sulfuric acid,

pseudoephedrine, ammonia, and lithium. Additionally, Defendant, a self-identified methamphetamine cook and user, was convicted of possession of ethyl ether and sulfuric acid with intent to manufacture methamphetamine, and lithium batteries were found close to the pseudoephedrine tablets. Furthermore, the pseudoephedrine tablets were found in the same location as: multiple zip-loc plastic bags, 5 containers of salt, drain cleaner, 3 containers of starter fluid, 2 containers of isopropyl and denatured alcohol, coffee filters, 3 funnels, a large amount of plastic tubing, plastic pitchers, plastic gloves, 2 propane cylinders with torches, a fire extinguisher, 2 digital scales, burnt aluminum foil, and multiple caps and containers, all of which are items associated with the manufacture of methamphetamine.

Given the substantial number of incriminating items found with the pseudoephedrine, as well as Defendant's admission that he was a methamphetamine cook, we conclude there was sufficient evidence for a jury to reasonably infer Defendant possessed the pseudoephedrine with intent to manufacture methamphetamine, rather than merely for personal use. Accordingly, we hold the trial court did not err by denying Defendant's motion to dismiss.

NO ERROR.

Judges BRYANT and STROUD concur.

Report per Rule 30(e).