IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-48

 Filed: 7 February 2017

New Hanover County, Nos. 13 CRS 56716-17

STATE OF NORTH CAROLINA

 v.

ANTWARN LEE ROGERS

 Appeal by defendant from judgment entered 13 August 2015 by Judge W. Allen

Cobb, Jr., in New Hanover County Superior Court. Heard in the Court of Appeals 8

August 2016.

 Attorney General Roy Cooper1, by Special Deputy Attorney General Heather H.
 Freeman, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Constance
 E. Widenhouse, for defendant-appellant.

 CALABRIA, Judge.

 Antwarn Lee Rogers (“defendant”) appeals from jury verdicts finding him

guilty of possession with intent to manufacture, sell and deliver cocaine; intentionally

keeping and/or maintaining a vehicle used for the keeping and/or selling of controlled

substances; possession of drug paraphernalia; possession of one-half ounce or less of

marijuana; and having attained the status of habitual felon. Because the evidence

did not establish continuous possession of a vehicle for the purpose of keeping or

selling a controlled substance, the trial court erred in denying defendant’s motion to

 1When the briefs and records in this case were filed, Roy Cooper was Attorney General.
Joshua H. Stein was sworn in as Attorney General on 1 January 2017.
 STATE V. ROGERS

 Opinion of the Court

dismiss the charge of maintaining a vehicle for the keeping and/or selling of a

controlled substance. However, with respect to defendant’s other arguments, the trial

court did not commit plain error.

 I. Factual and Procedural Background

 Between December of 2012 and August of 2013, Detective Evan Luther of the

Vice and Narcotics Unit of the New Hanover Sheriff’s Department (“Detective

Luther”) “bec[a]me familiar with the name of Antwarn Rogers[]” through his

narcotics investigations. On 8 August 2013, Detective Luther was investigating

defendant, and determined that he was driving a particular vehicle and staying in a

particular hotel room. He assembled a search warrant and notified assisting

detectives to monitor the hotel room. Detective Luther also advised the assisting

detectives that defendant “was wanted on outstanding warrants[,]” so that they knew

that they could initiate contact with defendant to serve outstanding processes,

irrespective of whether the search warrant was granted. After the detectives

detained defendant, Detective Luther executed the search warrant, which authorized

him to search both the hotel room and the vehicle in connection with defendant.

 In the hotel room, detectives located “a baggy that was in the toilet dispenser

roll” containing narcotics. Detectives located “another baggy with white rock

substance[]” and “a black digital scale[.]” Detective Luther swabbed the scale with a

field test kit, which revealed the presence of cocaine.

 -2-
 STATE V. ROGERS

 Opinion of the Court

 In the vehicle, detectives located “two baggies with a white rock substance . . .

inside of the gas cap” of the vehicle. They also found money folded and placed inside

of a Timberland boot in the car. A detective also located a rolled marijuana cigarette

inside the ashtray in the front of the vehicle.

 Defendant was indicted for possession with intent to manufacture, sell, and

deliver cocaine; manufacture of cocaine; felony possession of cocaine; maintaining a

vehicle for the sale of a controlled substance; possession of drug paraphernalia;

possession of one-half ounce or less of marijuana; and having attained the status of

an habitual felon.

 At the outset of trial, the State declined to proceed on the charge of

manufacture of cocaine. At the close of the State’s evidence, defendant moved to

dismiss the charges. The trial court granted defendant’s motion to dismiss with

respect to the charge of felony possession of cocaine, and denied the motion with

respect to the remaining charges. Defendant offered no evidence.

 The jury returned verdicts finding defendant guilty of possession with intent

to manufacture, sell, and deliver cocaine; maintaining a vehicle for the sale of a

controlled substance; possession of drug paraphernalia; and possession of one-half

ounce or less of marijuana. The jury further found that defendant had attained the

status of an habitual felon.

 -3-
 STATE V. ROGERS

 Opinion of the Court

 Defendant failed to attend the trial, and the trial court entered an order finding

that he could be tried in absentia, and that entry of judgment would be continued

until defendant could be brought before the court.

 On 13 August 2015, the trial court entered judgment upon the jury’s verdicts,

and sentenced defendant to consecutive active sentences of 35-54 months for

maintaining a vehicle, possession of drug paraphernalia, and possession of

marijuana, and 111-146 months for possession with intent to manufacture, sell, and

deliver cocaine, in the North Carolina Department of Adult Correction.

 Defendant appeals.

 II. Motion to Dismiss

 In his first argument, defendant contends that the trial court erred by denying

his motion to dismiss the charge of maintaining a vehicle for the sale of a controlled

substance. We agree.

 A. Standard of Review

 “This Court reviews the trial court’s denial of a motion to dismiss de novo.”

State v. Smith, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

 Upon review of a motion to dismiss, the court determines
 whether there is substantial evidence, viewed in the light
 most favorable to the State, of each essential element of the
 offense charged and of the defendant being the perpetrator
 of the offense.

 -4-
 STATE V. ROGERS

 Opinion of the Court

State v. Lane, 163 N.C. App. 495, 499, 594 S.E.2d 107, 110 (2004) (citations omitted).

“The [trial] court should grant a motion to dismiss if the State fails to present

substantial evidence of every element of the crime charged.” State v. McDowell, 329

N.C. 363, 389, 407 S.E.2d 200, 214 (1991). “Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.”

State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).

 B. Analysis

 N.C. Gen. Stat. § 90-108(a)(7) (2015) makes it unlawful to “knowingly keep or

maintain any . . . vehicle . . . which is used for the keeping or selling of [controlled

substances].” “This statute prohibits the maintaining of a vehicle only when it is used

for ‘keeping or selling’ controlled substances[.]” State v. Mitchell, 336 N.C. 22, 32, 442

S.E.2d 24, 29 (1994). “The focus of the inquiry is on the use, not the contents, of the

vehicle.” Mitchell, 336 N.C. at 34, 442 S.E.2d at 30 (emphasis in original).

 Thus, the fact that an individual within a vehicle possesses
 marijuana on one occasion cannot establish the vehicle is
 used for keeping marijuana; nor can one marijuana
 cigarette found within the car establish that element.
 Likewise, the fact that a defendant was in his vehicle on
 one occasion when he sold a controlled substance does not
 by itself demonstrate the vehicle was kept or maintained
 to sell a controlled substance.

State v. Dickerson, 152 N.C. App. 714, 716, 568 S.E.2d 281, 282 (2002) (citation,

quotation marks, brackets, and ellipses omitted). N.C. Gen. Stat. § 90-108(a)(7) does

not require the State to demonstrate a defendant’s ownership of a vehicle, or that a

 -5-
 STATE V. ROGERS

 Opinion of the Court

sale was actually transacted from the vehicle. “The totality of the circumstances

controls, and whether there is sufficient evidence of the ‘keeping or maintaining’

element depends on several factors, none of which is dispositive.” State v. Hudson,

206 N.C. App. 482, 492, 696 S.E.2d 577, 584. In Mitchell, in interpreting N.C. Gen.

Stat. § 90-108(a)(7), our Supreme Court observed that

 [t]he word ‘keep’ is variously defined as follows: ‘[t]o have
 or retain in one’s power or possession; not to lose or part
 with; to preserve or retain. . . . To maintain continuously
 and methodically. . . . To maintain continuously and
 without stoppage or variation . . . [; t]o take care of and
 to preserve . . . .”

Id. at 32, 442 S.E.2d at 29 (quoting Black’s Law Dictionary 868 (6th ed. 1990)).

Thus, “‘[k]eep’ . . . denotes not just possession, but possession that occurs over a

duration of time.” Id. at 32, 442 S.E.2d at 30 (emphasis added).

 In Hudson, a law enforcement officer had stopped a car carrier truck driven by

the defendant after being alerted of the vehicle’s “possible drug activity” and

observing the truck weaving over the center line and fog line twice. 206 N.C. App. at

483-84, 696 S.E.2d at 579. The officer asked to see the bills of lading for the cars

being transported on the truck. Id. at 484, 696 S.E.2d at 579. One of the bills of

lading for a particular car was different from those for the other cars and aroused the

officer’s suspicion due to the contact information, pick-up address, and drop-off

address listed. Id. Ultimately, the defendant consented for officers to search the

carrier truck as well as the vehicles it was carrying. In the course of their search,

 -6-
 STATE V. ROGERS

 Opinion of the Court

officers found 7.5 pounds of marijuana in the trunk of the car with the unusual bill of

lading. Id. at 484, 696 S.E.2d at 579-80. The defendant was subsequently convicted

of, inter alia, maintaining a vehicle for the keeping of a controlled substance in

violation of N.C. Gen. Stat. § 90-108(a)(7).

 On appeal, the defendant argued his motion to dismiss the charge of keeping

or maintaining a vehicle used for the keeping or selling of a controlled substance

should have been granted because there was no evidence that the possession of the

marijuana in the trunk of the vehicle “ ‘occurred over a duration of time or that [he]

used the vehicle on any prior occasion to keep or sell controlled substances.’ ” Id. at

492, 696 S.E.2d at 584. This Court disagreed, noting that the bill of lading showed

that the defendant had picked up the car two days before he was arrested and that

he had possessed the car since then while transporting it from Miami en route to New

York. Id. We stressed that this evidence demonstrated “[the d]efendant had

maintained possession as the authorized bailee of the vehicle continuously and

without variation for two days before being pulled over[.]” Id. at 492, 696 S.E.2d at

584 (emphases added). The defendant “retained control and disposition over the

vehicle” over the course of multiple days, which we deemed “indisputably . . . a

duration of time.” Id. See also Lane, 163 N.C. App. at 500, 594 S.E.2d at 111

(providing that a conviction under N.C. Gen. Stat. § 90-108(a)(7) requires evidence of

either “possession of [a controlled substance] in the vehicle that occurred over a

 -7-
 STATE V. ROGERS

 Opinion of the Court

duration of time, [or] . . . evidence that [a] defendant . . . used the vehicle on a prior

occasion to sell [a controlled substance].”)

 In the present case, Detective Luther testified that he had been investigating

defendant since approximately December 2012. He also testified that he had

“information that [defendant] had been in possession [of the white Cadillac] for some

period of time[.]” However, it appears from the transcript that Detective Luther

obtained that information earlier on the day of defendant’s arrest, from two

individuals pulled in an unrelated traffic stop. The State seems to confirm this in

their brief to this Court, noting that

 [a]s a result of that traffic stop, Detective Luther was
 provided with information that assisted in an ongoing
 investigation of Defendant, including the description of a
 vehicle Defendant would be driving and an address where
 he would be located. Based on that information, Detective
 Luther set up surveillance during the afternoon of 8
 August 2013 and notified other detectives to look out for
 Defendant in a white Cadillac and at room 129 at the Econo
 Lodge on Market Street in Wilmington.

(Emphasis added.) We find no indication that law enforcement officers had

information, prior to the day of defendant’s arrest, linking defendant to the white

Cadillac.

 Detective Luther also testified that once he obtained certain identifying

information about defendant on 8 August 2013, he “notified all the assisting

detectives places to go, a vehicle specifically to be looking for, a room number at a

 -8-
 STATE V. ROGERS

 Opinion of the Court

hotel to be specifically focused on, and for any comings or goings from that hotel

room.” Specifically, “based upon the information that [Detective Luther had]

received[,]” he “relay[ed] to other officers to be looking for [a] white Cadillac with the

license number that [he] gave.”

 Officers began surveilling the Econo Lodge between 3:00 and 3:30 p.m.

Lieutenant Leslie Wyatt (“Lt. Wyatt”) testified that he drove by the Econo Lodge,

observed a white Cadillac parked at the adjacent Ramada Inn, and then drove to a

nearby gas station to get gas. When Lt. Wyatt returned minutes later, the Cadillac

was gone. Lt. Wyatt parked in the Ramada Inn parking lot to begin surveillance of

Room 129 at the Econo Lodge, and “roughly [ten] minutes after . . . set[ting] up [the]

surveillance, [he] saw the same white Cadillac that was parked at the Ramada pull

in the parking lot of the Econo Lodge and park . . . almost directly in front of Room

129.” Lt. Wyatt observed only one person, whom he recognized as defendant, in the

vehicle at that time. Lt. Wyatt saw defendant enter Room 129. He testified that

defendant was in the hotel room “[a] total of probably [forty-five] minutes” before “[h]e

came out of the room, shut the door behind him, and got into the white Cadillac.” Lt.

Wyatt and several other officers followed as defendant drove to an apartment

complex, left the complex, and continued driving. Shortly thereafter, officers “were

able to conduct a vehicle stop on the Cadillac and place [defendant] under arrest for

outstanding warrants.”

 -9-
 STATE V. ROGERS

 Opinion of the Court

 While other officers set up surveillance at the Econo Lodge, Detective Luther

began preparing a search warrant. During preparation of the search warrant, at

approximately 3:30 p.m., Detective Luther learned that “the white Cadillac was

confirmed to be at the Ramada, [consistent with] the information that [he] had

received [during the unrelated traffic stop].” (Emphasis added.) The search warrant

was signed at 4:20 p.m. Detective Luther drove to the Econo Lodge with the warrant,

arriving at approximately 4:30 p.m. By the time Detective Luther arrived, defendant

was already “detained in another detective’s vehicle[.]” After searching the hotel

room and seizing evidence, officers searched “the 2000 Cadillac DeVille that

[defendant] was stopped and detained in.”

 The evidence thus showed that defendant was surveilled and observed to be

the sole driver and occupant of the Cadillac for, at most, one-and-a-half hours on the

afternoon of his arrest. Cf. State v. Calvino, 179 N.C. App. 219, 222-23, 632 S.E.2d

839, 842-43 (2006) (finding sufficient evidence of keeping a motor vehicle for the

purpose of selling a controlled substance, where informant purchased drugs from

defendant in the same vehicle on two separate occasions, one week apart, and “[b]oth

of these transactions were observed and recorded by police.”); State v. Bright, 78 N.C.

App. 239, 240, 337 S.E.2d 87, 87 (1985) (upholding defendant’s conviction under N.C.

Gen. Stat. § 90-108(a)(7), and noting that defendant was stopped while driving a car

arresting officer “had seen defendant operating . . . on several occasions.”). The

 - 10 -
 STATE V. ROGERS

 Opinion of the Court

evidence did not show that defendant had “maintained possession . . . of the [Cadillac]

continuously and without variation” for anything beyond a couple of hours on that

single day. See Hudson, 206 N.C. App. at 492, 696 S.E.2d at 584 (emphasis added).

 The evidence showed only that, earlier on the day of defendant’s arrest, officers

received information from two individuals pulled in an unrelated traffic stop

indicating they should look for defendant in a specific vehicle and at a specific hotel

room. The State failed to establish that no other individual accessed, occupied,

operated, or otherwise used the Cadillac prior to the brief period officers surveilled

defendant on the afternoon of his arrest. See State v. Boswell, ___ N.C. App. ___, 680

S.E.2d 901, 2009 WL 2139184 at *3 (2009) (unpublished) (finding insufficient

evidence of keeping or maintaining a vehicle, where “the vehicle driven by defendant

was owned by his father, and numerous people were allowed to use the vehicle on a

regular basis.”). The Cadillac was registered in the name of another individual,

whose criminal history included a prior drug charge. Detective Luther testified he

“didn’t know whether or not [that individual] was at [the Econo Lodge] hotel room”

on 8 August 2013 “before the [surveillance] started[.]” Detective Luther also testified

several items were found in the Cadillac, including a hat, that he “couldn’t classify

[as belonging to defendant].” He testified only that “[b]ased off of the information

that was provided to [him], [he] had reason to believe [defendant] had been in that

car for quite some time and was using that vehicle.”

 - 11 -
 STATE V. ROGERS

 Opinion of the Court

 Even if, as Detective Luther contended, there was reason to believe defendant

had been “in possession of [the Cadillac] for some period of time,” there was

insufficient evidence that defendant used that vehicle on any prior occasion for the

purpose of keeping or selling a controlled substance, which N.C. Gen. Stat. § 90-

108(a)(7) requires. See, e.g., State v. Craven, 205 N.C. App. 393, 403, 696 S.E.2d 750,

756 (2010), rev’d in part on other grounds, 367 N.C. 51, 744 S.E.2d 458 (2013) (finding

sufficient evidence of keeping and maintaining a vehicle under N.C. Gen. Stat. § 90-

180(a)(7), where witness testified she and defendant transported cocaine in the

vehicle on two separate dates, and expert testified defendant was found to possess

cocaine in the vehicle on a third date; evidence was “adequate to support a conclusion

that defendant had possession of cocaine in his mother’s car over a duration of time

and/or on more than one occasion” (emphasis added)); cf. State v. Horton, 189 N.C.

App. 211, 657 S.E.2d 448, 2008 WL 565485 at *2 (2008) (unpublished) (finding

insufficient evidence of keeping or maintaining a vehicle, where “the vehicle driven

by [d]efendant was owned by another person and loaned to him on the day he was

pulled over and searched. No evidence was presented that [d]efendant used this

vehicle on any other occasion to keep a controlled substance”). On the afternoon of

defendant’s arrest, surveilling officers did not report seeing defendant “[go] to [the

Cadillac’s] gas cap [or] open[] and close[] the gas cap.” However, this was insufficient

to support an inference that the drugs found in the Cadillac’s locked gas cap had been

 - 12 -
 STATE V. ROGERS

 Opinion of the Court

hidden in the car on a prior date, because nothing was known about the use or

maintenance of the vehicle prior to 3:00 or 3:30 p.m. that day, much less in the

preceding days or months.

 The receipt found in the Cadillac was likewise insufficient to “support[] a

logical and legitimate deduction” that defendant had used the Cadillac on a previous

occasion to keep or sell drugs. State v. Piggott, 331 N.C. 199, 207, 415 S.E.2d 555,

559-60 (1992) (noting evidence is insufficient to withstand a motion to dismiss if it

“merely raise[s] a suspicion or conjecture” as to the existence of a fact in issue).

Detective Luther testified “[it was] not [his] contention that the receipt [found in the

Cadillac] was in any way involved in any drug-related matter[.]” He further conceded

he “[didn’t] know if [the receipt] was in [the Cadillac] the day before [8 August 2013].”

The receipt did not amount to substantial evidence that defendant had used the

Cadillac, over a period of time, to keep or sell a controlled substance.

 Because the State failed to demonstrate continuous maintenance or possession

of the Cadillac by defendant beyond the period of time he was surveilled on the

afternoon of his arrest, or show that defendant had used the Cadillac on a prior

occasion to keep or sell drugs, it could not rely on evidence seized from the hotel room

to support a charge under N.C. Gen. Stat. § 90-108(a)(7). The evidence showed

defendant possessed drugs in the Cadillac on one occasion. There was insufficient

evidence to show that, even on the day of his arrest, defendant’s use and control of

 - 13 -
 STATE V. ROGERS

 Opinion of the Court

the Cadillac was exclusive. While there was evidence, obtained from two individuals

who happened to be arrested earlier on the same day as defendant’s arrest, that

defendant “possessed” the Cadillac “for some period of time,” there was insufficient

evidence to show defendant had used the vehicle on any prior occasion for keeping or

selling a controlled substance. Accordingly, the trial court should have dismissed the

charge of maintaining a vehicle for the purpose of keeping or selling a controlled

substance. We reverse the trial court’s denial of defendant’s motion to dismiss that

charge, and remand for resentencing.

 III. Plain Error

 In his remaining arguments, defendant contends that the trial court

committed various errors which were not properly preserved by objection. We

therefore review them for plain error.

 A. Standard of Review

 “In criminal cases, an issue that was not preserved by objection noted at trial

and that is not deemed preserved by rule or law without any such action nevertheless

may be made the basis of an issue presented on appeal when the judicial action

questioned is specifically and distinctly contended to amount to plain error.” N.C.R.

App. P. 10(a)(4); see also State v. Goss, 361 N.C. 610, 622, 651 S.E.2d 867, 875 (2007),

cert. denied, 555 U.S. 835, 172 L. Ed. 2d 58 (2008).

 - 14 -
 STATE V. ROGERS

 Opinion of the Court

 The North Carolina Supreme Court “has elected to review unpreserved issues

for plain error when they involve either (1) errors in the judge’s instructions to the

jury, or (2) rulings on the admissibility of evidence.” State v. Gregory, 342 N.C. 580,

584, 467 S.E.2d 28, 31 (1996).

 For error to constitute plain error, a defendant must
 demonstrate that a fundamental error occurred at trial.
 See Odom, 307 N.C. at 660, 300 S.E.2d at 378. To show that
 an error was fundamental, a defendant must establish
 prejudice—that, after examination of the entire record, the
 error “had a probable impact on the jury's finding that the
 defendant was guilty.” See id. (citations and quotation
 marks omitted); see also Walker, 316 N.C. at 39, 340 S.E.2d
 at 83 (stating “that absent the error the jury probably
 would have reached a different verdict” and concluding
 that although the evidentiary error affected a fundamental
 right, viewed in light of the entire record, the error was not
 plain error).

State v. Lawrence, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012).

 B. Defendant’s Conduct

 Defendant first contends that the trial court committed plain error in

admitting the opinions of detectives regarding defendant’s conduct. We disagree.

 Defendant contends that Detective Luther and Lt. Wyatt offered improper

opinions “to the effect that Mr. Rogers was a drug dealer”. Defendant contends that

their testimony about the manner in which defendant conducted himself with regards

to both the hotel room and the vehicle, and Detective Luther’s testimony that the

baggies of cocaine found in defendant’s hotel room were “indicative of sale, not use”

 - 15 -
 STATE V. ROGERS

 Opinion of the Court

conveyed to the jury that defendant was a drug dealer. In essence, defendant

contends that the testimony of Detective Luther and Lt. Wyatt invaded the province

of the jury by constituting an opinion of defendant’s guilt.

 In the instant case, Detective Luther testified that he has “investigated or been

assisting” fifty drug cases involving hotels and motels. He testified that, in his

experience in these investigations, there are “common characteristics” associated

with such cases. He then testified, again based on his experience, that defendant’s

conduct in how he rented the hotel room and kept it mostly bare was consistent with

the patterns he had observed in prior drug cases. He further testified that, based on

his experience, the plastic baggies found in the bathroom were of a sort commonly

associated with the sale, not the personal use, of drugs.

 Lt. Wyatt testified to his observations when defendant arrived at the hotel.

Specifically, he testified that, shortly after entering the room, defendant opened the

blinds on the window. He testified that, in his experience, “people that are involved

in the narcotics trade like to keep an eye outside their houses for law enforcement,

[or] potential buyers[.]” Lt. Wyatt also testified that, when defendant left the hotel,

he drove to an apartment complex, drove onto another road, then turned around and

went back in the direction from which he came. He testified that this was common

to drug dealers, as it was “[i]indicative of someone seeing if they’re being followed.”

 - 16 -
 STATE V. ROGERS

 Opinion of the Court

 We hold that the testimony of Detective Luther and Lt. Wyatt was not

improper opinion testimony concerning defendant’s guilt, but rather ordinary

testimony expressing their own experience and observations. On plain error review,

the burden falls to defendant to demonstrate that, absent the admission of this

testimony, the jury probably would have reached a different verdict. In light of the

fact that this testimony was based upon the officers’ own experience and knowledge,

and in light of the physical evidence of drugs and paraphernalia found in the hotel

room and vehicle, we hold that defendant has failed to meet the burden of showing

plain error.

 This argument is without merit.

 C. Hearsay Evidence

 In his next argument, defendant contends that the trial court erred by

admitting alleged hearsay testimony. Specifically, defendant contends that the trial

court erred by allowing Detective Luther to testify about information collected from

non-testifying witnesses during an investigation of defendant because it was hearsay.

We disagree.

 “Hearsay is defined as ‘a statement, other than one made by the declarant

while testifying at the trial or hearing, offered in evidence to prove the truth of the

matter asserted.’ ” State v. Morgan, 359 N.C. 131, 154, 604 S.E.2d 886, 900 (2004)

(quoting N.C. Gen. Stat. § 8C-1, Rule 801(c) (2003)). “Hearsay is not admissible except

 - 17 -
 STATE V. ROGERS

 Opinion of the Court

as provided by statute or by these rules.” N.C. Gen. Stat. § 8C-1, Rule 802 (2015). In

State v. Rollins, regarding the testimony given by an agent about information he

learned from a third-party, this Court held that “statements are not hearsay if they

are made to explain the subsequent conduct of the person to whom the statement was

directed.” State v. Rollins, 226 N.C. App. 129, 138-39, 738 S.E.2d 440, 448 (2013)

(citation and quotations omitted).

 In the instant case, Detective Luther testified that he spoke about defendant

during his investigation with several people involved with the distribution of drugs.

Detective Luther stated that he received information about defendant’s vehicle,

location, telephone number, and other addresses at which defendant may be located

from the people he interviewed.

 We have previously held that hearsay testimony given by an informant to the

witness concerning a defendant’s conduct was admissible to “explain how the

investigation of [d]efendants unfolded, why [d]efendants were under surveillance . . .

and why [the witness] followed the [defendants’] vehicle[.]” State v. Wiggins, 185 N.C.

App. 376, 383-84, 648 S.E.2d 865, 871 (2007); see also State v. Levya, 181 N.C. App.

491, 500, 640 S.E.2d 394, 399 (2007) (holding that an informant’s explanation was

admissible to explain an officer’s presence at a restaurant); State v. Batchelor, 202

N.C. App. 733, 737, 690 S.E.2d 53, 56 (2010) (holding that an informant’s

 - 18 -
 STATE V. ROGERS

 Opinion of the Court

identification of the defendant was admissible to explain the officer’s presence at a

car wash, rather than to prove the defendant’s guilt).

 In the instant case, it is clear that the testimony at issue was not introduced

to prove defendant’s guilt, but to establish the background and reasons for Detective

Luther’s investigation. We hold that defendant has failed to show that, absent this

evidence, the jury probably would have reached a different verdict.

 This argument is without merit.

 D. Drug Investigations and Arrest Warrants

 Defendant lastly contends that the trial court committed plain error by

admitting testimony that defendant was the subject of prior investigations and had

outstanding warrants. We disagree.

 Defendant contends that the evidence was hearsay and irrelevant and should

not have been admitted. However, much like the evidence of Detective Luther’s

sources, this evidence was not admitted for the truth of the matter asserted, but to

explain detectives’ conduct. Specifically, this evidence was introduced at trial to

explain Detective Luther’s instruction to his assisting detectives to detain defendant

pending the execution of the search warrant. The assisting detectives were able to

do so due to the outstanding warrants on which defendant was wanted.

 This evidence was not introduced to demonstrate that defendant was guilty of

the instant offenses or any others, but rather to explain the context of the police

 - 19 -
 STATE V. ROGERS

 Opinion of the Court

investigation. As such, we hold that defendant has not shown that, absent this

evidence, the jury probably would have reached a different verdict.

 This argument is without merit.

 IV. Conclusion

 Because the evidence, taken in the light most favorable to the State, did not

support the elements of the charge of maintaining a vehicle for keeping or selling a

controlled substance, the trial court erred in denying defendant’s motion to dismiss.

That denial is therefore reversed, and this matter is remanded for resentencing.

Because defendant has failed to show that, absent the additional errors he alleges,

the jury would probably have reached a different verdict, we hold that he has failed

to demonstrate plain error.

 NO ERROR IN PART; REVERSED AND REMANDED IN PART.

 Chief Judge McGEE concurs.

 Judge STROUD concurs in part and dissents in part by separate opinion.

 - 20 -
 No. COA16-48 – State v. Rogers

 STROUD, Judge, concurring in part and dissenting in part.

 I concur with the majority opinion on all issues except the first, regarding

sufficiency of the evidence to support defendant’s conviction of maintaining a vehicle

for the “keeping or selling of [controlled substances].” N.C. Gen. Stat. § 90-108(a)(7)

(2015). On this issue, I dissent because I believe the evidence is sufficient when

viewed “in the light most favorable to the State, giving the State the benefit of every

reasonable inference and resolving any contradictions in its favor.” State v. Rose, 339

N.C. 172, 192, 451 S.E.2d 211, 223 (1994).

 Under N.C. Gen. Stat. § 90-108(a)(7), it is unlawful to “knowingly keep or

maintain any . . . vehicle . . . which is used for the keeping or selling of [controlled

substances].” The majority correctly notes that the word “keep” in the statute

“denotes not just possession, but possession that occurs over a duration of time.”

State v. Mitchell, 336 N.C. 22, 32, 442 S.E.2d 24, 30 (1994). However, as the majority

also notes, “[t]he totality of the circumstances controls, and whether there is sufficient

evidence of the ‘keeping or maintaining’ element depends on several factors, none of

which is dispositive.” State v. Hudson, 206 N.C. App. 482, 492, 696 S.E.2d 577, 584

(2010). Our disagreement is how long the “duration of time” of the “keeping” must

be. Mitchell, 336 N.C. at 32, 442 S.E.2d at 30.

 After evaluating the totality of the circumstances in the present case, I believe

the State presented substantial evidence that defendant “knowingly [kept] or

maintain[ed]” the vehicle within the meaning of N.C. Gen. Stat. § 90-108(a)(7). The
 STATE V. ROGERS

 STROUD, J., concurring in part and dissenting in part

majority implies that because there is “no indication law enforcement officers had

information, prior to the day of Defendant’s arrest, linking Defendant to the white

Cadillac[,]” a reasonable jury could not have found “possession that occurs over a

duration of time” to support the keeping element. Mitchell, 336 N.C. at 32, 442 S.E.2d

at 30.

 First, our case law does not establish what specific “duration of time” is

sufficient. The majority references Hudson, where two days of possession and use of

the vehicle in question was deemed “indisputably . . . a duration of time.” 206 N.C.

App. at 492, 696 S.E.2d at 584. But would Hudson have been decided differently if

defendant had been pulled over two hours after picking up the car, rather than two

days? Hudson is an easier case and “indisputably” occurred over “a duration of time.”

Id. But the analysis does not change just because the situation in this case is less

clear cut.

 We review the evidence in the light most favorable to the State, drawing

reasonable inferences therefrom. See, e.g., State v. Santiago, 148 N.C. App. 62, 68,

557 S.E.2d 601, 606 (2001) (“In reviewing the denial of a motion to dismiss for

insufficient evidence, the trial court must consider the evidence in the light most

favorable to the State and give the State every reasonable inference to be drawn

therefrom.” (quotation marks and ellipses omitted)). Specifically, our job on appeal

of a motion to dismiss is simply to evaluate whether the jury heard “substantial

 2
 STATE V. ROGERS

 STROUD, J., concurring in part and dissenting in part

evidence, viewed in the light most favorable to the State, of each essential element of

the offense charged and of the defendant being the perpetrator of the offense.” State

v. Lane, 163 N.C. App. 495, 499, 594 S.E.2d 107, 110 (2004) (citations omitted).

 The majority views the evidence in this case as showing that defendant was

“the sole driver and occupant of the Cadillac for, at most, one-and-a-half hours on the

afternoon of his arrest.” In doing so, the majority interprets testimony from Detective

Luther that defendant had been in possession of the vehicle “for some period of time”

as only referring to information received the day he was arrested. But the jury also

heard evidence that a narcotics investigation had been ongoing regarding defendant

since December 2012, and that upon searching the Cadillac on the day defendant was

arrested, officers found a receipt in the front seat dated 29 May 2013, for a $30.00

“service fee” made out to defendant.

 In addition, during the surveillance of the vehicle by law enforcement,

defendant was the only driver of the vehicle; no one else rode in it. And in the

Cadillac, in which only defendant had been seen, police found a marijuana cigarette

in the ashtray, money folded inside of a boot on the back seat, and plastic baggies

“with a white rock substance packaged in the baggies” hidden inside the gas cap. The

gas cap was locked and had to be opened with a latch on the inside of the car, and the

baggies were of the same color, type, and size -- purple plastic bags -- as those found

in defendant’s hotel room.

 3
 STATE V. ROGERS

 STROUD, J., concurring in part and dissenting in part

 This evidence shows that defendant had been keeping the car for a period of

time and that drugs had been hidden in the car at some time prior to when the officers

stopped him, since he could not have put drugs into the gas cap while he was driving.

Officers had been watching defendant’s comings and goings in the car most of the

day, and he had not placed anything in the gas cap while they were watching him, so

the jury could infer that the baggies had to have been placed there sometime before

their surveillance began. Based on all of these facts, I believe that while it is a closer

call, this case is similar to Hudson, 206 N.C. App. at 492-93, 696 S.E.2d at 584, and

that the evidence supports all of the essential elements of the crime charged,

including “keeping” the vehicle over a period of time for the purpose of keeping drugs

(cocaine in this case). The totality of the evidence in this case shows that defendant

was “keeping” the Cadillac -- as its the sole driver and occupant over a period of time

-- and that he was “keeping” cocaine in this vehicle, hidden inside the gas cap door,

as required by N.C. Gen. Stat. § 90-108(a)(7).

 Evidence was admitted at trial without objection indicating that defendant was

in possession of the Cadillac “for some period of time[,]” which the jury could properly

consider when making its determination. Furthermore, even accepting the majority’s

assumption of just one and a half hours of “keeping” the cocaine hidden in the gas cap

of the vehicle, I find no case law or indication in N.C. Gen. Stat. § 90-108(a)(7) that

this is an insufficient amount of time -- under the totality of the circumstances in this

 4
 STATE V. ROGERS

 STROUD, J., concurring in part and dissenting in part

case -- to demonstrate defendant was “keeping” the vehicle for the purpose of

“keeping” drugs.

 Although I am usually opposed to citing unpublished opinions, in this dissent

I believe it is useful to note a recent unpublished opinion of this Court, State v.

Rousseau, __ N.C. App. __, 793 S.E.2d 292, 2016 WL 7100567, 2016 N.C. App. LEXIS

1191 (COA 16-380) (Dec. 6, 2016) (unpublished). While not binding on this Court,

Rousseau addresses this same issue, and based primarily upon the facts in that case,

where the marijuana was found hidden in the engine compartment of the vehicle, this

Court found there was sufficient evidence to support the conviction of “keeping” a

controlled substance in the vehicle. Id., 2016 WL 7100567, at *3, 2016 N.C. App.

LEXIS 1191, at *8. This Court concluded in Rousseau that “the State presented

substantial and uncontroverted evidence that the vehicle was used to ‘keep’ the

marijuana” where drugs were found “inside the vehicle’s engine compartment outside

of the passenger area.” Id. Although there was evidence in Rousseau that defendant

“regularly drove the vehicle” and that he had recently been stopped during a routine

traffic stop, he similarly did not own the vehicle. Id., 2016 WL 7100567, at *1, 2016

N.C. App. LEXIS 1191, at *3. Unlike this case, there was no evidence that law

enforcement was already investigating the defendant for selling controlled

substances or that they had reason to believe that the defendant was keeping drugs

in the vehicle prior to his arrest. Id.

 5
 STATE V. ROGERS

 STROUD, J., concurring in part and dissenting in part

 This Court distinguished Rousseau from prior cases due to the “additional”

evidence “that a controlled substance was hidden in a storage space in the engine

compartment, and that remnants of this controlled substance were found throughout

the interior.” Id., 2016 WL 7100567, at *2, 2016 N.C. App. LEXIS 1191, at *6. This

Court also noted:

 Furthermore, the evidence tended to show that the vehicle
 was most recently used to facilitate a breaking and
 entering, not anything related to the controlled substance.
 From this evidence, the jury could infer that the vehicle
 was being used for the “keeping” of a controlled substance.
 Therefore, the trial court was correct in denying
 Defendant’s motion to dismiss.

Id., 2016 WL 7100567, at *3, 2016 N.C. App. LEXIS 1191, at *8. I believe that the

majority’s analysis of this issue in Rousseau was correct, although I also note that

there was a dissent and the defendant filed a notice of appeal to our Supreme Court

on that basis on 9 January 2017.

 Here, there is no issue of whether defendant had constructive possession of the

cocaine found in the gas cap, since that was determined by his conviction for

possession with intent to manufacture, sell, or deliver cocaine. All of the evidence,

viewed collectively and in the light most favorable to the State, suggests that

defendant had made use of the vehicle for at least an hour and a half prior to his

arrest -- or possibly even since May of 2013 -- and that on the day in question, his use

was exclusive. At some time prior to his arrest and the hour and a half surveillance

 6
 STATE V. ROGERS

 STROUD, J., concurring in part and dissenting in part

of defendant before the arrest, he hid cocaine behind the gas cap, where he was

“keeping” it. These facts suggest that defendant was “keep[ing]” the vehicle and did

so for the purpose of “keeping” controlled substances, namely the cocaine found in the

gas cap. N.C. Gen. Stat. § 90-108(a)(7). I would therefore hold that the trial court

did not err in denying defendant’s motion to dismiss the charge of maintaining a

vehicle for the keeping or selling of a controlled substance.

 7